Norman SEABROOK, et al.,
Plaintiffs–Appellants,

v.

Michael P. JACOBSON, et al.,
Defendants–Appellees.

Docket No. 97–7971.

United States Court of Appeals,
Second Circuit.

Argued May 1, 1998.

Decided Aug. 21, 1998.

Richard A. Dienst, New York City (Leslie H. Ben–Zvi, Dienst & Serrins, LLP, of counsel), for Plaintiffs–Appellants.

Ellen S. Ravitch, New York City (Jeffrey D. Friedlander, Acting Corporation Counsel of the City of New York, Stephen J. McGrath, Chlarens Orsland, of counsel), for Defendants–Appellees.

Before OAKES, NEWMAN and LEVAL, Circuit Judges.

OAKES, Senior Circuit Judge:

Plaintiffs are the Correction Officers' Benevolent Association ("COBA") and eight individual correction officers (collectively, "the officers") whom defendants, the New York City Department of Correction, the City of New York, and various individuals (collectively, "the City") have suspended pending resolution of various criminal charges against the officers. The City suspended the officers pursuant to New York City Administrative Code section 9–112, which provides that correction officers may be suspended without pay indefinitely while criminal charges are pending. However, New York State Civil Service Law provides that a civil servant can be suspended without pay pending resolution of charges against him *only for thirty days*, N.Y. Civ. Serv. Law § 75(3) (McKinney Supp.1997–98), *unless* such provision is supplemented, modified, or replaced by an agreement between the public employer and a union, N.Y. Civ. Serv. Law § 76(4) (McKinney 1983). The Civil Service Law defines an "agreement" as "the result of the exchange of mutual promises between the chief executive officer of a public employer and an employee organization which becomes a binding

contract." N.Y. Civ. Serv. Law § 201(12) (McKinney 1983).

In this action, plaintiffs asserted federal claims against the City under 42 U.S.C. § 1983 (1994). They also asserted a state-law claim, arguing that New York City Administrative Code § 9–112 is invalid because it conflicts with the State's Civil Service Law. Prior to trial, the parties and the District Court agreed that if plaintiffs would voluntarily dismiss their federal claims, the District Court would retain supplemental jurisdiction and decide the state-law claim. *See* 28 U.S.C. § 1367 (1994). After a bench trial, the District Court concluded the City's provision allowing the suspensions was valid, as it fit within the exception provided by New York Civil Service Law section 76(4). In consideration of all the factors outlined below, especially that the federal claims that were the sole source of jurisdiction had been dismissed and that the remaining state law claim turned on a novel and complex issue involving the interpretation of state statutes concerning the administration of state government and the balancing of important state policies, we conclude that the District Court should have dismissed, rather than retained supplemental jurisdiction over the state law claim. Accordingly, we vacate the judgment below and remand with instructions to dismiss the state claim and allow plaintiffs to refile their federal claims if they choose to do so.

## I. FACTS

The District Court found the facts as follows. In October 1974, COBA and the City were engaged in negotiating a collective bargaining agreement for 1974–76. The president of COBA apparently signed a letter dated October 25, 1974, in which he acknowledged that in the course of negotiations he and the City had agreed jointly to recommend to the City Council a provision that would allow the City to suspend correction officers indefinitely, without pay, pending final disposition of charges against them. In October 1975, COBA and the City signed the collective bargaining agreement they had been negotiating, but this written collective bargaining agreement did *not* include or reflect the earlier agreement described in the letter. Nonetheless, Administrative Code section 9–112 was proposed to the City Council in 1976, and it passed with COBA's support. For almost two decades, the City relied on Administrative Code section 9–112 to suspend correction officers indefinitely, without pay, without challenge from COBA. The District Court concluded that Administrative Code section 9–112 constituted an "agreement" between COBA and the City within the meaning of the New York State Civil Service Law, and thus was valid. *See Seabrook v. Jacobson,* 970 F.Supp. 252, 263–64 (S.D.N.Y.1997).

## II. DISCUSSION

Under 28 U.S.C. § 1367(a), federal courts have jurisdiction to decide claims over which they would not otherwise have jurisdiction, if those claims are so related to claims over which they do have jurisdiction that the claims form part of the same case or controversy. Subsection (c) of § 1367 lists several circumstances in which the federal court may choose not to exercise that jurisdiction: (1) the state claim raises a novel or complex issue of state law; (2) the state claim substantially predominates over the claim over which the court has original jurisdiction; (3) the district court has dismissed all claims over which it had original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. Other than the catch-all provision, the listed circumstances reflect concerns about the relationship between state and federal courts. This concern is consistent with the judicial doctrine of pendent jurisdiction which § 1367 codifies.[1] The Supreme Court articulated comity-based concerns when it first discussed the discretionary exercise of pendent jurisdiction in *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–29, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966): "[The doctrine's] justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal

---

**1.** When it enacted § 1367, Congress grouped pendent jurisdiction with ancillary jurisdiction, and referred to both as "supplemental jurisdiction."

court should hesitate to exercise jurisdiction over state claims.... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.* at 726, 86 S.Ct. 1130. The Court has continued to emphasize the need for federal courts to give weight to these concerns before exercising supplemental jurisdiction. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity ...."); *accord City of Chicago v. International College of Surgeons,* — U.S. ——, 118 S.Ct. 523, 533–34, 139 L.Ed.2d 525 (1997). Where a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts. This is particularly true if the federal claim on which the state claim hangs has been dismissed. *See Rounseville v. Zahl,* 13 F.3d 625, 631 (2d Cir.1994) (holding that, where the state claim required an application of state law that was potentially novel, the state claim was appropriately resolved in state court, and retention of the state claim after the dismissal of the federal claim "would be an inappropriate exercise of pendent jurisdiction and a waste of judicial resources"); *Morse v. Univ. of Vermont,* 973 F.2d 122, 127–28 (2d Cir.1992) (holding that where state claims involved novel questions of state law, it was an abuse of discretion to exercise jurisdiction over the state claims after dismissing the federal claims).

Section 1367(d) ensures that the plaintiff whose supplemental state claim is dismissed has at least thirty days after dismissal to refile in state court. Some states, including New York, allow a longer period. *See* N.Y.

C.P.L.R. § 205(a) (McKinney 1990) (allowing plaintiffs six months to refile).

■ The state law claim at issue presents not only a novel question of interpretation of a state statute, but one that involves the state's interest in the administration of its government. As noted above, state law provides that employees facing criminal charges can be suspended without pay only for thirty days, *see* N.Y. Civ. Serv. Law § 75(3), unless that provision is "supplemented, modified, or replaced by agreements negotiated between the state and an employee organization." *Id.* § 76(4). For purposes of the Civil Service Law, an agreement is defined as an exchange of mutual promises which becomes a binding contract. *Id.* § 201(12).

Accepting the District Court's findings of fact, it appears that in the course of negotiating a collective bargaining agreement, COBA's president promised to support a legislative provision authorizing the suspension of pay for more than thirty days, and that although this promise did not become part of the binding collective bargaining agreement, the legislative provision did pass with COBA's support. Because (1) COBA supported the legislation, (2) COBA's support resulted from a promise made in the course of negotiating a collective bargaining agreement, and (3) COBA did not challenge the validity of the legislation for nineteen years, the District Court concluded that Administrative Code section 9–112 constituted an "agreement," and thus was valid under the exception provided by New York Civil Service Law section 76(4). It is certainly a novel question whether a legislative enactment that is not incorporated in a written collective bargaining agreement can constitute an "agreement" under New York's Civil Service Law by reason of the Union's support for the enactment. One New York court has so indicated, *see Meringolo v. Jacobson,* 173 Misc.2d 650, 662 N.Y.S.2d 356, 359 (N.Y.Sup.1997), and the appeal in that case is currently pending.[2] We express no view on this question.

---

2. The trial court's statement in *Meringolo* that a union's support for a legislative enactment could not turn the enacted provision into an "agreement" was dicta, since the plaintiffs in that case, though also challenging the validity of Adminis-

trative Code 9–112, were not represented by COBA. 662 N.Y.S.2d at 359. At least with respect to employees who were not represented by COBA, the court in *Meringolo* declared City Administrative Code 9–112 invalid. *Id.* This is the

There are several factors that weigh in favor of upholding the District Court's exercise of supplemental jurisdiction. First, the exercise of that jurisdiction was part of an agreement, proposed to the parties by the District Court, that the Court would adjudicate the one state law claim now at issue if the plaintiffs would dismiss their federal claims and all other state law claims. All parties to the litigation agreed to this proposal. Second, the agreement spared the parties the need to pursue discovery on the dismissed federal and state law claims, and spared the District Court the need to adjudicate at least the federal law claims. Third, the case comes to us after the state law claim has been tried on the merits, although the weight of this factor is somewhat diminished by the fact that the trial took only one day. Fourth, all the parties are united in urging this Court to uphold the District Court's decision to exercise supplemental jurisdiction, even as they dispute the merits of the outcome.[3] *See* Letter of Ellen Ravitch, Asst. Corp. Counsel to Clerk of Court (May 7, 1998); Letter of Atty. Richard A. Dienst to Court of Appeals (May 7, 1998).

Opposed to the exercise of supplemental jurisdiction are the following factors. The resolution of plaintiffs' state law claim in this case turns on a question of state law which not only is undecided, but which also requires a balancing of numerous important policies of state government: the relationship between state and municipal entities, the public interest in removing individuals accused of crimes from positions of authority, and local governments' budgetary constraints. If we decide this question, we will be making a tentative ruling that may be soon displaced by a state adjudication. *Cf. Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971 (1941) ("The reign of law is hardly promoted if an unnecessary ruling of a federal court is . . . supplanted by a controlling decision of a state court") (citation omitted). Or, perhaps worse, the New York courts might never have the opportunity to decide the issue, as the persons interested in the question may be either directly or collaterally estopped by our decision from relitigating the issue in the state court. *See Schwartz v. Public Adm'r. of Bronx*, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 958–59, 246 N.E.2d 725 (1969) (finding that mutuality is not required for collateral estoppel, as long as the party against whom the doctrine is invoked has had a full opportunity to litigate the issue). Finally, the plaintiff Union, though timely asserting claims on behalf of recently suspended Union members, has tolerated the City's claimed suspension authority for two decades without a legal challenge that could have been brought in state court any time a correction officer was suspended for more than 30 days because of pending criminal charges.

Although in the usual case a district court has broad discretion to decide whether to exercise supplemental jurisdiction over state law claims, considering the relevant factors outlined above we conclude that in this case the District Court should have refrained. *Cf. Fay v. South Colonie Cent. Sch. Dist.*, 802 F.2d 21, 34 (2d Cir.1986) (holding that District Court should have abstained from deciding a pendent claim that involved unresolved questions of New York family law). The Officers' state law claim should have been dismissed without prejudice.

### III. CONCLUSION

We conclude that the District Court should not have exercised supplemental jurisdiction over the state law claim in this case. We vacate the judgment below and remand with directions to dismiss without prejudice the state claim under 28 U.S.C. § 1367. The Officers may refile their federal claims if they wish to do so. To the extent their

---

decision now on appeal. Because the court's indication that a union's support would not turn a legislative enactment into an "agreement" was dicta, however, the appellate court may decide the appeal without addressing this issue.

**3.** Though the parties' joint preference is entitled to some weight, we place little, if any, weight on the alleged hardship to the individual plaintiffs.

Without doubting the seriousness of their suspension without pay, we note that it was their decision to challenge the City's alleged violation of state law in federal court. Their "fairness" concern, *see Carnegie-Mellon*, 484 U.S. at 350, 108 S.Ct. 614, would be stronger if they were state court plaintiffs whose lawsuit had been removed to the District Court.

**74**

federal claims turn on (or may be rendered moot by) a determination of this novel and complex question of state law, however, the District Court should consider abstention. *See Pullman,* 312 U.S. at 500, 61 S.Ct. 643. This course would not only allow the state courts to decide the unresolved question of state law first, but it might obviate the need to decide the federal constitutional issues plaintiffs raise. *See id.* at 498, 61 S.Ct. 643. *See also Lehman Brothers v. Schein,* 416 U.S. at 390–91, 94 S.Ct. 1741 (regarding the possibility of certification).