Samuel D. ROSEN, Plaintiff,

v.

COUNTY OF SUFFOLK, NEW YORK, Suffolk County Sheriff's Department, Gary Faucon, Suffolk County Deputy Sheriff (Badge # 25), Schreiber, Suffolk County Deputy Sheriff (Badge # 131), Susan A. Hanrahan aka Susan Hanrahan Rosen, Does 1–10, Michael J. Ostrow, and Barbara Brown, Defendants(s).

No. CV–00–6095(TCP)(MLO).

United States District Court, E.D. New York.

Feb. 25, 2004.

Eric M. Lieberman, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, New York City, for Plaintiff.

Samuel D. Rosen, New York City, Pro se.

Arlene S. Zwilling, Suffolk County Attorney, Hauppauge, NY, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

This case revolves around a particularly acrimonious divorce between Samuel D. Rosen, ("Rosen" or "Plaintiff") and his ex-wife, Susan Hanrahan ("Hanrahan" or "Defendant"), which has inexplicably wended its way into the federal courts, wasting valuable time and resources, as well as the patience of this Court. It all began in February of 2000, when the Plaintiff filed for divorce from Hanrahan. Problems erupted between the couple during the subsequent divorce proceedings and nine months later, the Plaintiff brought this lawsuit against Hanrahan, her divorce attorneys, Michael J. Ostrow ("Ostrow") and Barbara Brown ("Brown"), the County of Suffolk ("County"), Suffolk County Sheriff's Department ("Sheriff's Dept."), Does 1–10, Suffolk County Deputy Sheriff Sergeant Gary Faucon ("Faucon"), and Suffolk County Deputy Sheriff Schreiber ("Schreiber"), alleging violations of 42 U.S.C.1983 and various State laws. In addition, the Plaintiff also brought a separate lawsuit against Hanrahan in New York State Court, alleging, among other things, parallel State law violations to the ones in the instant action.

Defendant Hanrahan, along with Ostrow and Brown, subsequently made a motion to dismiss the complaint. On August 30, 2001, this Court dismissed the Plaintiff's federal claims against Hanrahan on two grounds. First, the Court held that Hanrahan was not a State actor and second, even if Hanrahan were a State actor, abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) would be appropriate. *See* August 30, 2001 Order at 6–8. The Court also dismissed the Plaintiff's State law malicious prosecution claim against Hanrahan and his State law abuse of prosecution claims against Hanrahan and her attor-

neys.[1] *Id.* Defendant Hanrahan then moved for attorney's fees pursuant to 42 U.S.C.1988(b), which this Court denied, without prejudice to renew, once the Plaintiff's appeal had been decided.

In a Summary Order dated December 16, 2002, the Court of Appeals for the Second Circuit affirmed this Court's dismissal of the Plaintiff's federal law claims against defendant Hanrahan, but vacated the dismissal of the State law claims and remanded for this Court to determine whether it should exercise supplemental jurisdiction. *Rosen v. County of Suffolk,* 53 Fed.Appx. 578, 581, 2002 WL 31819617 (2d Cir.2002).

Currently, there are four motions before this Court:

1. Defendants County, Sheriff's Dept., Faucon, and Schreiber ("County Defendants") move pursuant to Fed.R.Civ. P.12(c) for a judgment on the pleadings;

2. Defendant Hanrahan renews her motion for attorney's fees pursuant to 1988(b);

3. Defendant Hanrahan requests that this Court decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. 1367(c)(3) over Plaintiff's State law claims or in the alternative, moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the claims; and

4. Plaintiff cross-moves for partial summary judgment pursuant to Fed. R.Civ.P. 56(c) to dismiss Defendants Faucon and Schreiber's defense of qualified immunity.

For the foregoing reasons, the County Defendants' motion pursuant to Fed. R.Civ.P. 12(c) should be GRANTED, Defendant Hanrahan's motion for attorney's fees pursuant to 1988(b) should be DE-NIED, the State law claims against Defendant Hanrahan should be DISMISSED, as this Court declines to exercise supplemental jurisdiction and the Plaintiff's cross-motion pursuant to Fed.R.Civ.P. 56(c) should also be DENIED, and this Court, *sua sponte,* GRANTS summary judgment, in part, in favor of Defendant Schreiber and other unnamed peace officers.

## BACKGROUND

### Factual History

The factual history in this case is somewhat confusing as it involves multiple defendants in varying stages of the litigation process. In an attempt to dispel some confusion, the factual recitations are divided up according to the two groups of Defendants: 1) County Defendants, and 2) Hanrahan.

### I. County Defendants: Motion for Judgment on the Pleadings

The first motion, brought by the County Defendants, concerns their execution of a Temporary Order of Protection ("TOP"). On Thursday, August 17, 2000, after an earlier "domestic" dispute with the Plaintiff, Defendant Hanrahan obtained an *ex parte* TOP from the Suffolk County State Court ("State Court"), which prevented the Plaintiff from entering their shared marital home. The TOP had a return date of Wednesday, August 23, 2000 and stated that the Plaintiff was "permitted to remove his/her personal effects" from the home "no later than 6:00 p.m., 8–24–2000 provided that [the Plaintiff] is accompanied by a police officer or deputy sheriff." (Defs.Exh.A).

On that same day, August 17th, the Plaintiff drove to his beach house on the

---

1. As a result of that Order, there remained only federal law claims against the County, Sheriff's Dept., Faucon and Schreiber.

Jersey shore for the weekend. The Plaintiff alleges that Defendant Schreiber purposefully waited until the next day to contact him about the TOP, thereby depriving the Plaintiff of the opportunity to request an evidentiary hearing.[2] Moreover, instead of calling his summer house, Schreiber called the Plaintiff's office and left a voice mail. In this voicemail, "Schreiber did not identify the nature of the papers, did not inform [the Plaintiff] that they were the TOP, and did not warn [the Plaintiff] to keep away from the Huntington house Hanrahan and [the Plaintiff] shared." (Pl. Mem. of Law at 3).

When the Plaintiff reviewed his office messages on Friday afternoon, he heard Schreiber's message and returned the call. In this telephone conversation, Schreiber "stated that he had some 'papers' to serve on Rosen," but again, allegedly "refused to identify the nature of these 'papers.'" (Pl. Mem. of Law at 3). In any event, Schreiber and the Plaintiff agreed to meet at the marital home on Sunday for service.

Due to an unexpected change of plans, however, the Plaintiff returned to his marital home a day early, on Saturday the 19th. Defendant Hanrahan immediately called the Sheriff's Dept. and Schreiber, accompanied by three additional peace officers, entered the premises and served the TOP on the Plaintiff. The Plaintiff alleges that Defendant Schreiber informed him that he had only a "few minutes" to pack his belongings and would not be allowed to re-enter the marital home once he left, with or without police accompaniment. Schreiber and the other officers then "confined and restrained [the Plaintiff's] movements, surrounded him, permitted Rosen to enter only two rooms of the house, followed him into his bedroom, and

watched and examined his personal items as he packed them." (Pl. Mem. of Law at 4).

When the Plaintiff later realized that he had forgotten some of his possessions during the rush to vacate the marital home, most importantly, his passport, he called the Sheriff's Dept. to see if he could return to retrieve the items. Defendant Faucon, however, refused to dispatch a police officer to accompany the Plaintiff back to the marital home. Moreover, the Plaintiff alleges that Faucon told him that according to his interpretation of the TOP and established County and Sheriff Dept. procedures, the Plaintiff was not allowed to re-enter his home until the TOP was vacated.

On Wednesday, August 23rd, after failing to get the TOP vacated earlier in the week, Defendant Hanrahan informed the Plaintiff that she was willing to dismiss the proceedings, and both parties appeared in State Court. Upon Defendant Hanrahan's petition, the TOP was vacated and the Plaintiff was able to return to the marital home.

Less than two months later, on October 11, 2000, the Plaintiff brought this federal action. Only three causes of action remain against the County Defendants:

1 & 2. Pursuant to 42 U.S.C. § 1983, violation of Plaintiff's Fourteenth Amendment due process rights, substantive and procedural; and

3. Pursuant to 42 U.S.C. § 1983, violation of Plaintiff's Fourth and Fourteenth Amendment rights for unlawful search and seizure.

## II. Defendant Hanrahan: Motion for Attorney's Fees

The second motion concerns Defendant Hanrahan's use of process to obtain pro-

---

**2.** Plaintiff alleges that Friday was the only day in State Court reserved for evidentiary hear-

ings.

tection and restraining orders against the Plaintiff. On February 24, 2000, Defendant Hanrahan obtained an *ex parte* Temporary Restraining Order ("TRO"), which prevented the Plaintiff from spending certain marital assets. Plaintiff alleges that Hanrahan, with the aid and permission of her attorneys, Ostrow and Brown, used false information to obtain this TRO in order to pressure the Plaintiff into a settlement. Approximately one month later, with the consent of Hanrahan and her counsel, the State Court vacated the TRO.

Thereafter, on August 17, 2000, Defendant Hanrahan sought and obtained an *ex parte* TOP. Again, the Plaintiff alleges that the Defendant used false information to obtain this TOP and in conjunction with the County Defendants, delayed in giving the Plaintiff notice for two days, in order to prevent him from receiving an immediate evidentiary hearing. *See* County Defendants Fact Recitation, *supra.*

On Monday, August 21st, the Plaintiff appeared in State Court to seek either an immediate vacatur of the TOP or a hearing. Defendant Hanrahan appeared without counsel and refused to set aside the TOP. As a result, the Plaintiff's motion was denied. The next day, Defendant Hanrahan informed the Plaintiff that she was willing to dismiss the proceedings and on Wednesday, August 23rd, with Hanrahan's permission, the TOP was vacated.

The Plaintiff subsequently brought this federal action, alleging that Defendant Hanrahan, in using the procedures for the TOP and TRO under New York law, violated the Plaintiff's federal civil rights. The Plaintiff alleged that Hanrahan was a State actor because Section 821–a of the New York Family Court Act placed the authority of whether to restrain a person and prevent them from accessing their property in the hands of private individuals. (Amend. Compl. 31–32; 71–72). As noted above, this Court dismissed the federal claims against Hanrahan, and the Second Circuit affirmed, explaining that "[w]e decline to expand the reach of 1983 to encompass Hanrahan's application for a TOP." *Rosen v. County of Suffolk*, 53 Fed. Appx. 578, 580, 2002 WL 31819617 (2d Cir.2002). In addition, the Second Circuit vacated the dismissal of the State law causes of action and remanded for this Court to:

> 1) decide whether to exercise supplemental jurisdiction because Rosen's state law damages claims "form part of the same case or controversy" as Rosen's claims against the remaining defendants; 2) decide whether the exercise of supplemental jurisdiction should be declined under 28 U.S.C. § 1367(c); and 3) if it chooses to exercise supplemental jurisdiction, determine whether it would be appropriate to issue a stay of the federal action pending the outcome of the related state proceedings.

*Id.* at 581 (citations omitted).

On December 9, 2002, apparently unbeknownst to the Second Circuit at the time it issued its decision, Judge Barbara R. Kapnick of the New York State Supreme Court, New York County, dismissed the Plaintiff's identical State law claims against Hanrahan, in the parallel State Court proceeding, for failure to state a cause of action under N.Y. C.P.L.R. 3211(a)(7). The Appellate Division, First Department, recently affirmed, noting that "plaintiff is demonstrably unable to show that process was utilized against him, without excuse or justification, to obtain a collateral objective." *Rosen v. Hanrahan*, 2 A.D.3d 352, 768 N.Y.S.2d 818 (1st Dep't 2003).[3]

---

**3.** In a recent letter to the Court, the Plaintiff

has graciously offered to voluntarily dismiss

## DISCUSSION

### A. County Defendants' Motion for Judgment on the Pleadings

In deciding a Fed.R.Civ.P. 12(c) motion, a Court must "accept all allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994). The Plaintiff's complaint must not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ad–Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). This standard is "applied with particular strictness when the plaintiff complains of a civil rights violation." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991).

#### i. Due Process Clause: Substantive Violation

The Plaintiff's first claim fails to make out a constitutional violation and should be dismissed on the pleadings. Essentially, the Plaintiff claims that his due process rights were violated by the County Defendants' refusal to let him return to his house in order to retrieve forgotten items. Although it is unclear from the Plaintiff's second amended complaint and motion papers whether he is claiming a substantive or procedural due process violation, the former is the best fit and accordingly, will be used to analyze the claim.

■ In order to show a substantive due process violation, the Plaintiff has to meet a particularly high threshold. Indeed, "[t]he protections of substantive due process are available only against egregious conduct which goes beyond merely 'offending some fastidious squeamishness or private sentimentalism' and can fairly be viewed as so 'brutal' and 'offensive to human dignity' as to shock the conscience." *Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 172 (2d Cir.2002) (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 n. 6 (2d Cir.1973)) (quoting *Rochin v. California*, 342 U.S. 165, 172, 174, 72 S.Ct. 205, 96 L.Ed. 183 (1952)); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ("conduct that shocks the conscience and is so brutal and offensive that it does not comport with traditional ideas of fair play and decency . . . violates substantive due process").

■ Taking all the Plaintiff's allegations as true, he simply cannot show a substantive due process violation. The County Defendants' refusal to dispatch a police officer, in order to accompany the Plaintiff back to his home, can hardly be said to shock the conscience. Even assuming the County Defendants' actions were unjust, conduct that is "merely 'incorrect or ill advised'" falls short of meeting the substantive due process threshold. *Catanzaro v. Weiden*, 188 F.3d 56, 64 (2d Cir.1999) (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir.1995)). As the Supreme Court explained in *County of Sacramento*, "we have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with State authority causes harm." *Id.* at 848, 118 S.Ct. 1708. Therefore, the Plaintiff's second amended complaint clearly fails to

his State law claims against Hanrahan if "the New York Court of Appeals denies leave to appeal." (Letter from Eric M. Lieberman to Judge Thomas C. Platt, dated January 13, 2004). This Court, however, feels no need to wait for the inevitable, and as stated *supra*, declines to exercise supplemental jurisdiction.

plead facts which rise to the level of a substantive due process violation.

### ii. Due Process Clause: Procedural Violation

The Plaintiff's second due process claim, this one for a violation of procedural due process, also fails to rise to the level of a constitutional violation. The Plaintiff alleges that the County Defendants delayed service of the TOP for two days, thereby depriving him of his opportunity to obtain an immediate evidentiary hearing in violation of his Fourteenth Amendment procedural due process rights.[4]

The "fundamental requirement" of procedural due process is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). Here, the Plaintiff appears to be arguing that even though the TOP itself was constitutionally adequate in terms of procedural due process concerns, the two day "delay" in serving it was a violation of due process. This argument, however, is untenable. First, the TOP was served on the Plaintiff in a timely manner, more than four days *before* its court ordered return date of Wednesday, August 23rd. Second, the Plaintiff was able to seek almost immediate judicial review of the TOP on Monday. The fact that the State Court refused to vacate the TOP on that day is of no concern in the instant matter because the Plaintiff was able to be heard, in satisfaction of any procedural due process concerns.

Third, the Plaintiff was, in fact, put on notice of the TOP on Friday, by the voice-mail Defendant Schreiber left at his office. Although the Plaintiff attempts to argue that this was irrelevant because he was not told the "nature of the papers," an allegation which the County Defendants vehemently deny, the Plaintiff specifically agreed to wait until Sunday night to receive service. (Pl. Mem. of Law at 3). In sum, this Court simply fails to see how the Plaintiff can claim a procedural due process violation if the TOP itself (with its court-ordered return date) comports with procedural due process, there is no requirement under New York State law that it be served on the day of issuance, and the delay in its service, if any, was due to the fact that the Plaintiff left New York on vacation. *See* N.Y. FCA 153–b(c). Accordingly, the Plaintiff's second amended complaint fails to make out a procedural due process violation.

### iii. Fourth Amendment: Search & Seizure

Finally, the Plaintiff's third claim, that the County Defendants violated his Fourth and Fourteenth Amendment rights during the implementation of the TOP, should be dismissed because Defendant Schreiber and the other peace officers are protected by qualified immunity. *See* Discussion of Plaintiff's Motion for Summary Judgment, *supra.*

### B. Defendant Hanrahan's Motion for Attorney's Fees

Under 42 U.S.C.1988(b), the court may, in its discretion, award attorney's

---

4. According to N.Y. Family Court Act ("FCA") 153–b(c), which governs the service of TOPs, "[s]ervice of such temporary order of protection ... shall, insofar as practicable, be achieved promptly." *Id.* Moreover, N.Y. FCA 153–b(c) specifically states that an "officer" who is charged with serving a TOP "shall not be liable for damages resulting from failure to achieve service, where, having made a reasonable effort, such officer or designated person is unable to locate and serve the temporary order of protection ... at any address provided by the party requesting the order." *Id.*

fees to the prevailing party in a 1983 action. In order to be awarded attorney's fees, a defendant must show that a plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). The *Christiansburg* Court warned district courts against "engaging in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 421–22, 98 S.Ct. 694; *see also Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir.1994) ("[c]oncerned about the potential chilling effect on section 1983 plaintiffs—who are 'the chosen instrument of Congress to vindicate a policy of the highest national priority'—we are hesitant to award attorney's fees to victorious defendants in section 1983 actions") (quoting *Christiansburg*, 434 U.S. at 418, 98 S.Ct. 694).

■ In the instant action, Defendant Hanrahan argues that she is entitled to attorney's fees because the Plaintiff's allegations that she was a State actor for 1983 purposes was "patently absurd," and wholly without merit. (Def. Mem. of Law 17). Although the Plaintiff's 1983 suit against Defendant Hanrahan, claiming that she was a "state actor," was not a particularly compelling argument, neither was it completely without legal basis. Indeed, in affirming the dismissal of the Plaintiff's 1983 claims, the Second Circuit explained that under *Lugar v. Edmondson Oil*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), "[a] party may be a state actor 'because he [or she] is a state official, because he [or she] has acted together with or has obtained significant aid from state officials, or because his [or her] conduct is otherwise chargeable to the State.'" *Rosen*, 53 Fed.Appx. at 580 (quoting *Lugar v.*

*Edmondson Oil*, 457 U.S at 937, 102 S.Ct. 2744).

The Second Circuit, however, distinguished *Lugar* from the instant case, holding that "[i]n contrast to the prejudgment attachment statute at issue in *Lugar* . . . the relevant statutory section presently at issue—Article 8 of the New York Family Court Act . . . provides that a TOP may issue only upon a showing of good cause, following judicial review of the application." *Rosen*, 53 Fed.Appx. at 580. Thus, the Second Circuit "decline[d] to expand the reach of 1983 to encompass Hanrahan's application for a TOP." Given that an argument to "expand" existing precedent to a new factual situation is certainly within the realm of permissible advocacy, attorney's fees appear to be unwarranted in this situation, and therefore, Defendant Hanrahan's motion is denied.

### C. The Second Circuit's Remand of the State Law Claims

■ Under 28 U.S.C. 1367(c)(3), this Court may decline to exercise supplemental jurisdiction over related State law claims, if it has "dismissed all claims over which it has original jurisdiction." *Id.* While 1367(c)(3) does not require dismissal, "in general, where the federal claims are dismissed before trial, the State claims should be dismissed as well." *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir.1998) (citing *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir.1994)); *see also Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir.1998) (noting that it is particularly appropriate for the district court to dismiss where "the federal claim on which the state claim hangs has been dismissed").

■ In the instant action, as explained *supra*, the Plaintiff's remaining 1983 claims against the County Defendants are to be dismissed. Therefore, it is within this Court's discretion to decline to exer-

cise supplemental jurisdiction over the Plaintiff's State law claims against Defendant Hanrahan pursuant to 1367(c)(3). Given the meritless nature of these State law claims, as evidenced by the New York State Supreme Court's dismissal and Appellate Division's subsequent affirmation of the Plaintiff's identical claims against Hanrahan in the parallel State Court proceeding, this Court hereby declines to exercise supplemental jurisdiction.

### D. Plaintiff's Cross–Motion for Summary Judgment

In response to the County Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(c), the Plaintiff cross-moved for summary judgment, under Fed.R.Civ.P. 56(c), on the issue of Defendants Faucon and Schreiber's qualified immunity. However, since this Court has found that the County Defendants have not committed any substantive or procedural due process violations, there is no need to reach the question of qualified immunity on those claims and accordingly, the Plaintiff's motion is denied in that respect. This leaves only the issue of Defendant Schreiber and the other peace officers' qualified immunity for the alleged violations of the Fourth and Fourteenth Amendments, during the execution of the TOP.

■ The Plaintiff appears to be alleging two separate violations of the Fourth Amendment. First, the Plaintiff argues that during the execution of the TOP, Defendant Schreiber and the other officers conducted a search of his personal effects without a warrant. Second, the Plaintiff claims that the officers' conduct in confining and restraining him to two rooms of his house, during the execution of the TOP, was a seizure within the meaning of the Fourth Amendment. As noted *supra*, however, even assuming the Plaintiff's claims make out a Fourth Amendment violation, Defendant Schreiber and the officers are clearly entitled to qualified immunity. Therefore, the Plaintiff's motion for summary judgment on this issue is denied, and summary judgment is granted, *sua sponte*, in favor of Defendant Schreiber and the other unnamed peace officers.[5]

■ The Supreme Court has " 'stressed the importance of resolving immunity questions at the earliest possible stage in litigation.' " *Saucier v. Katz*, 533 U.S. 194, 200–202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)). Generally, public officials are entitled to qualified immunity if: "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Weyant v. Okst*, 101 F.3d 845, 857–58 (2d Cir.1996). An officer's actions are objectively reasonable if "officers of reasonable competence could disagree on the legality of defen-

---

5. Although a "court need not give notice of its intention to enter summary judgment against the moving party," *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991), the Second Circuit has tended to discourage this practice because of the possibility of "procedural prejudice" against the losing party. *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 140 (2d Cir.2000). However, the "threat of procedural prejudice is greatly diminished if the court's *sua sponte* determination is based on issues identical to those raised by the moving party." *Citibank*, 201 F.3d at 140 (quoting *Coach Leatherware*, 933 F.2d at 167). Here, the Plaintiff cross-moved for summary judgment on the issue of the County Defendants' qualified immunity, and this Court is granting summary judgment, in part, on this exact same issue to the non-moving party. Thus, there is no potential for prejudice in this situation and therefore, a *sua sponte* grant of summary judgment is appropriate.

dants' actions." *Ford v. Moore*, 237 F.3d 156, 162 (2d Cir.2001) (citations omitted). Defendants who violate constitutional rights are still entitled to enjoy qualified immunity unless it is demonstrated that their conduct was unreasonable. *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir.1995) (citations omitted).

First, in the unlikely event that a search within the meaning of the Fourth Amendment actually occurred during the execution of the TOP,[6] Defendant Schreiber and the officers are still entitled to qualified immunity because their actions were not objectively unreasonable. Defendant Schreiber and the officers had been called to the Plaintiff's marital home by Hanrahan to execute an order of protection. Thus, there were obvious safety concerns for both the Defendants and Hanrahan. Moreover, the New York Family Court Act 168(1) specifically gives police officers authority to "aid in securing the protection such [TOP] was intended to afford." *Id.* In light of those concerns, and in accordance with their power under the New York Family Court Act, it was not unreasonable for the Defendants to have examined the Plaintiff's personal effects, whilst packing, to insure that he was not concealing a weapon or other instrumentality that could pose a danger to those present.

Similarly, even if the Defendants' alleged actions in confining the Plaintiff to two rooms during the execution of the TOP constitutes a seizure within the meaning of the Fourth Amendment, they are still entitled to qualified immunity because those actions were not objectively unreasonable. Again, it is important to remember the context in which these alleged Fourth Amendment violations occurred. Defendant Schreiber and the other police officers, at Hanrahan's request and pursuant to a court order, were at the marital home to execute an order of *protection.* Clearly, their alleged actions in following, restraining and/or confining the Plaintiff to certain rooms of the marital home were necessary to ensure that the Plaintiff was not a danger to himself or others.

## CONCLUSION

In conclusion, it is the Court's firm hope that this Order will finally put to rest this protracted, bitter and ultimately improvident lawsuit. Therefore, it is hereby ordered that:

1. Defendants County, Sheriff's Dept., Faucon and Schreiber's motion pursuant to Fed.R.Civ.P. 12(c) should be GRANTED;

2. Defendant Hanrahan's motion for attorney's fees pursuant to 1988(b) should be DENIED;

3. The State law claims against Defendant Hanrahan should be DISMISSED, as this Court declines to exercise supplemental jurisdiction pursuant to 1367(c)(3); and,

---

**6.** There is a discrepancy between the Plaintiff's second amended complaint and his affidavit in support of his cross-motion for summary judgment. In the former, the Plaintiff alleges that the Defendants "without any search warrant, *examined* his personal effects as Rosen packed them." (2nd Amend. Compl. at 39) (emphasis supplied). In his sworn affidavit, however, the Plaintiff merely states that the Defendants "watched as I gathered and attempted to pack items, and was obviously in a position to look at my personal effects as I packed them, and did so." (Aff. Samuel Rosen at 7). The distinction is important because the second amended complaint might allege a search whereas the Plaintiff's affidavit clearly does not under the Plain View Doctrine. *See, e.g., United States v. George*, 975 F.2d 72, 78 (2d Cir.1992) ("If the [police] officers have not violated the Fourth Amendment in arriving at the place from where they can see an object in 'plain view' the search implicates no constitutionally-protected privacy interest").

240

4. Plaintiff's cross-motion pursuant to Fed.R.Civ.P. 56(c) should be DENIED, and this Court, *sua sponte*, GRANTS summary judgment, in part, in favor of Defendant Schreiber and the other unnamed peace officers, on the defense of qualified immunity for any Fourth Amendment violations.

SO ORDERED.