Shkelqim KOLARI and Sarah Vail, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

NEW YORK–PRESBYTERIAN HOSPITAL, New York–Presbyterian Health Care System, Inc., and John Does 1–10, Defendants–Appellees,

American Hospital Association, Defendant.

Docket No. 05–1981–CV.

United States Court of Appeals, Second Circuit.

Argued: Dec. 13, 2005.

Decided: July 11, 2006.

Robert J. Berg (Keith M. Fleischman, Ronald J. Aranoff, Brian S. Cohen, on the brief) Bernstein Liebhard & Lifshitz, LLP, New York, NY, for Plaintiffs–Appellants.

Jeffrey J. Greenbaum (James S. Frank, James M. Hirschhorn, on the brief), Sills Cummis Epstein & Gross P.C., New York, NY, for Defendants–Appellees.

Before: FEINBERG, B.D. PARKER and CUDAHY,\* Circuit Judges.

FEINBERG, Circuit Judge.

Plaintiffs-appellants are a proposed class of patients who received treatment from defendant-appellees New York–Presbyterian Hospital and New York–Presbyterian Health Care System, Inc. and were uninsured at the time of their treatment. They brought suit in federal court, asserting numerous federal and state causes of action challenging the allegedly inflated rates charged to them by defendants, particularly as compared to those rates charged to patients covered by private or government-funded health insurance.

On defendants' motions, the United States District Court for the Southern District of New York (Loretta A. Preska, J.) dismissed with prejudice plaintiffs' complaint in its entirety, including plaintiffs' numerous state-law claims. Plaintiffs appeal the dismissal of three of their state-law claims, arguing that the district court should not have exercised supplemental jurisdiction over these state-law claims af-ter all claims supporting original jurisdiction had been dismissed at a very early stage in the proceedings. Plaintiffs argue in the alternative that even if the district court was correct to reach the merits of their state-law claims, it erred in its conclusions and in denying without discussion plaintiffs' request for injunctive relief. We have jurisdiction under 28 U.S.C. § 1291.

We need not reach plaintiffs' alternative arguments because we agree that this case is "the usual case in which all federal-law claims are eliminated before trial" such that "the balance of factors to be considered ... judicial economy, convenience, fairness, and comity ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Accordingly, we vacate that portion of the district court's order dismissing with prejudice plaintiffs' appealed state-law claims and remand the case with instructions to dismiss those claims without prejudice.

## I. BACKGROUND

We accept as true the well-pleaded allegations of plaintiffs' amended class action complaint. See *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994). Defendant New York–Presbyterian Health Care System, Inc. ("NYPHS") is a federation of non-profit health care facilities in New York, New Jersey, and Connecticut, including approximately 33 tax-exempt acute care and community hospitals in the New York metropolitan area. Defendant New York–Presbyterian Hospital ("NYP") is an NYPHS member-institution and the non-profit teaching hospital of the medical colleges of Columbia and Cornell Universities. NYP has a number of campuses,

---

\* The Honorable Richard D. Cudahy, Circuit Court Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

including the New York Weill Cornell Medical Center ("Weill Cornell"). NYPHS and NYP are tax-exempt organizations under section 501(c)(3) of the Internal Revenue Code.

Plaintiff Shkelqim Kolari was admitted for treatment at Weill Cornell for severe burns to his arm in October 2000. At the time of his admission, Kolari was uninsured. He was discharged about ten days later, and billed approximately $58,000 for his hospital stay. Kolari required follow-up outpatient care on a biweekly basis, and returned to Weill Cornell for treatment accordingly. But on each visit, and prior to receiving treatment, Kolari was required to sign a form guaranteeing payment of all charges and to pay $75. On several occasions, Kolari was unable to afford the $75 fee and was refused treatment.

Plaintiff Sarah Vail was admitted to Weill Cornell for treatment of pregnancy complications in November 2002. Like Kolari, she was uninsured at the time of her admission. She was discharged after three days and two nights and was billed approximately $20,000 for her care. Kolari and Vail have received calls and/or correspondence from unknown persons attempting to collect on their unpaid hospital bills.

Although initiated by Kolari as a putative class action in July 2004, an amended class action complaint added Vail as a named plaintiff in September 2004.

Named as defendants were NYP and NYPHS (collectively, "NYP defendants"), and the American Hospital Association (the "AHA"), identified as a trade association for the non-profit hospital industry.[1], [2] Kolari and Vail proposed to represent a class consisting of "[a]ll persons who received any form of healthcare treatment from Defendant NYP and/or NYPHS and who were uninsured at the time of treatment." Am. Compl. ¶ 74.

Plaintiffs' amended complaint stated a host of federal- and state-law claims, primarily based on the factual allegation that the NYP defendants, aided by the AHA, charged the proposed class of uninsured individuals "unreasonable, discriminatory, and exceedingly inflated rates for medical services that bear no relation to the actual cost of such services," Appellant's Br. 3, in spite of defendants' avowed charitable purposes and tax-exempt status. Plaintiffs made repeated reference in their complaint to the higher rates charged by the NYP defendants to uninsured patients as compared to those rates charged to patients insured privately or through government-funded programs such as Medicare and Medicaid. According to plaintiffs, by setting excessive rates for health care services, the NYP defendants are able to negotiate discounted rates with private and government insurers that nonetheless yield generous reimbursements. In the meantime, uninsured patients, who do not benefit from any discount, are stuck with the artificially inflated rates. This lawsuit

---

**1.** The amended complaint also named as defendants John Does 1–10, identified as "certain unknown, unnamed persons and/or entities who may be liable for the claims asserted herein." Am. Compl. ¶ 36.

**2.** The NYP defendants had moved to dismiss the original complaint shortly after it was filed. Plaintiffs responded by filing a motion for a stay, pending the outcome of a motion before the Judicial Panel on Multidistrict Litigation to transfer the case along with 27 others to a central district. The district court denied the motion for a stay and plaintiffs then filed their amended complaint, mooting the NYP defendants' original motion to dismiss. The Judicial Panel on Multidistrict Litigation subsequently denied the motion to transfer. See *In re Not–for–Profit Hosps./Uninsured Patients Litig.*, 341 F.Supp.2d 1354, 1356 (2004).

is apparently one of dozens filed across the country asserting the same central claim against other non-profit hospitals. See *Leo T. Crowley, Hospitals Prevailing in Charity Care Cases, N.Y. L.J.*, Dec. 28, 2004, at 3.[3]

The NYP defendants moved under Rule 12(b)(1) and (6) to dismiss the complaint as against themselves, and the AHA moved separately to dismiss the claims against it.[4] The district court heard oral argument on the motions and thereafter granted them, dismissing plaintiffs' federal-law claims and exercising supplemental jurisdiction to dismiss plaintiffs' state-law claims as well. *Kolari v. N.Y.-Presbyterian Hosp.*, 382 F.Supp.2d 562 (S.D.N.Y.2005).

Plaintiffs appeal, but only as to their state-law claims of breach of contract, breach of duty of good faith and fair dealing, and violation of section 349 of the New York General Business Law; they do not appeal the dismissal of their federal-law claims or any other state-law claim.[5] Plaintiffs primarily challenge the district court's exercise of supplemental jurisdiction over these state-law claims. Plaintiffs also, in the alternative, argue that even if the district court properly exercised jurisdiction, it erred in dismissing these claims and in dismissing without discussion the injunctive relief requested in plaintiffs' amended complaint.

## II. DISCUSSION

■ Federal district courts have supplemental jurisdiction over state-law claims

---

**3.** Plaintiffs' amended complaint specifically stated the following claims. Twelve counts were pressed against the NYP defendants. First, plaintiffs asserted federal and state claims as third-party beneficiaries of alleged contracts arising out of the conferral of tax-exempt status on NYP and NYPHS by federal, state, and local governments in exchange for their charitable operation. According to plaintiffs, NYP and NYPHS breached these alleged contracts by failing to provide the proposed class affordable medical care. Second, plaintiffs asserted additional federal-law claims under the Fair Debt Collection Practices Act, the Emergency Medical Treatment and Active Labor Act, and 42 U.S.C. § 1983. Third, plaintiffs asserted several additional state-law claims: breach of the form contracts signed by plaintiffs as a condition of receiving treatment, breach of duty of good faith and fair dealing, breach of charitable trust, violation of section 349 of the New York General Business Law, unjust enrichment, common law fraud, and constructive fraud. As against the AHA, plaintiffs asserted one cause of action each for civil conspiracy and aiding and abetting. Plaintiffs additionally styled a request for injunctive and declaratory relief as Count Fifteen.

**4.** The procedural background is more complicated than this shorthand description suggests. In addition to the *Kolari* case, two

other cases raising similar claims were filed against NYP, one in the Southern District of New York (*Barbour v. New York–Presbyterian Hospital*) and one in the New York Supreme Court for Kings County (*Eroglu v. New York–Presbyterian Hospital*). After the state-court case was removed to federal court and transferred from the Eastern to the Southern District of New York, both cases were consolidated with the instant case. *Kolari v. N.Y.-Presbyterian Hosp.*, No. 04 Civ. 5506 (S.D.N.Y. Nov. 2, 2004) (consolidation order). The district court directed the *Barbour* and *Eroglu* plaintiffs to conform their complaints to the amended complaint in *Kolari* and made certain other provisions for the consolidation of briefing on the motions to dismiss that the NYP defendants had filed previously in each of the three cases. Id. Shortly before entry of the consolidation order, the AHA had moved to dismiss the *Kolari* amended complaint. After consolidation and after the *Barbour* and *Eroglu* plaintiffs added the AHA as a defendant in their amended complaints, the AHA additionally moved for dismissal of those complaints pursuant to a consolidated briefing schedule set by the district court.

**5.** Plaintiffs do not appeal the dismissal of their claims against the AHA, and, thus, the AHA is not a party to this appeal. "Appellees" as used hereinafter are the NYP defendants and John Does 1–10.

"that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). As the Supreme Court stated in discussing § 1367's predecessor judicial doctrine of pendent jurisdiction, however, this is traditionally "a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Subsection (c) of § 1367 "confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise." *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 173, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). Of particular relevance here, a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

■ Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional "values of judicial economy, convenience, fairness, and comity," *Cohill,* 484 U.S. at 350, 108 S.Ct. 614, in deciding whether to exercise jurisdiction. See *Itar–Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 446–47 (2d Cir.1998). In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." 484 U.S. at 350 n. 7, 108 S.Ct. 614; see also *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.... [I]f the federal law claims are

dismissed before trial ... the state claims should be dismissed as well."). We review the district court's decision for abuse of discretion, *Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 305 (2d Cir.2003), and depending on the precise circumstances of a case, have variously approved and disapproved the exercise of supplemental jurisdiction where all federal-law claims have been dismissed, see id. at 305–06 (collecting cases).

In choosing to exercise supplemental jurisdiction here, the district court did not explicitly balance the *Cohill* factors. Instead, it relied on considerations of federal health care policy that it believed were raised by plaintiffs' state-law claims. *Kolari,* 382 F.Supp.2d at 575 ("Where, as here, the state claims are 'so closely tied to questions of federal policy,' the argument for exercise of supplemental jurisdiction 'is particularly strong.' ") (quoting *Gibbs,* 383 U.S. at 727, 86 S.Ct. 1130). Explaining its reasoning, the district court first quoted plaintiffs' acknowledgment at oral argument that " 'the heart and soul of [their] case is the fact that the hospitals are charging rates, discriminatory rates, that are much higher for their uninsured patients than they are for their patients who have either private health insurance or are eligible for Medicare o[r] Medicaid.' " Id. The district court then characterized plaintiffs' state-law claims as being "largely premised on Plaintiffs' baseless assertions that hospitals designated as charitable institutions are required to provide free health care to the uninsured and indigent." Id. It continued: "The state claims clearly raise questions of *federal health care policy,* especially when viewed in the context of the dozens of nearly identical state law claims in the dozens of similar lawsuits filed in courts all over the United States." Id. (emphasis added).

While federal policy concerns may argue in favor of exercising supplemental jurisdiction even after all original-jurisdiction claims have been dismissed, see *Gibbs,* 383 U.S. at 727, 86 S.Ct. 1130 (approving of supplemental jurisdiction where federal preemption implicated by remaining state-law claims); *Marcus v. AT & T Corp.,* 138 F.3d 46, 57 (2d Cir.1998) (same), it is not immediately clear from the district court's discussion just what "federal health care policy" concerns are now raised by this case.

■ Following dismissal of the federal-law claims, what remained were plaintiffs' claims as beneficiaries of contracts alleged to arise out of the NYP defendants' tax-exempt status under state and local law and a battery of state-law claims assailing the NYP defendants' billing and collection practices. These claims do all stem from plaintiffs' central complaint that uninsured patients are gouged so as to inflate reimbursements received from private and government insurers, and thus it may be that this case carries some implication for the cost and availability of health care. This is certainly of national interest, not least of all because of the federal government's role as a funder of Medicare and Medicaid, see *Conn. Dep't of Soc. Servs. v. Leavitt,* 428 F.3d 138, 141 (2d Cir.2005). But a problem experienced nationally is not necessarily one in which there is an overriding federal governmental interest. And states, which administer and partially fund Medicaid, see id., and which are the primary regulators of the health care industry, see *Hillsborough Co. v. Automated Med. Labs.,* 471 U.S. 707, 719, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) ("[T]he regulation of health and safety matters is primarily, and historically, a matter of local concern."), also have a strong interest here. Thus, it is not obvious that federal interests control.

In any event, we are left to guess almost entirely at what federal interest, if any, is at stake. The district court's discussion is too limited to supply that interest, and appellees have not sought to justify supplemental jurisdiction on the basis of any federal policy concerns. Nor does the national scope of the litigation alone evidence a federal policy interest. In the absence of a clearly articulated federal interest and without any other consideration of the *Cohill* factors, we think the district court exceeded its discretion in exercising supplemental jurisdiction. *Cf. Baylis v. Marriott Corp.,* 843 F.2d 658, 665 (2d Cir.1988) (finding that even where possible question of federal preemption was presented, overall balance of *Cohill* factors weighed against pendent jurisdiction).

It is otherwise clear that this is the "usual case." *Cohill,* 484 U.S. at 350 n. 7, 108 S.Ct. 614. Plaintiffs' federal-law claims were eliminated on a motion to dismiss, prior to the investment of significant judicial resources,[6] and we can discern no extraordinary inconvenience or inequity occasioned by permitting the claims to be refiled in state court where they will be afforded a "surer-footed reading of applicable law." *Gibbs,* 383 U.S. at 726, 86

---

6. Although the consolidation of actions here necessitated a degree of management greater than might ordinarily be required, the judicial resources expended do not approach those that we have previously held justify pendent or supplemental jurisdiction after dismissal of all original-jurisdiction claims. *Cf. Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1192 (2d Cir.1996) (finding no abuse of discretion in exercise of jurisdiction over state claims where federal claim was dismissed only nine days before trial); *Raucci v. Town of Rotterdam,* 902 F.2d 1050, 1055 (2d Cir. 1990) (finding no abuse of discretion in exercise of jurisdiction over state claims despite dismissal of federal claim where discovery was completed, three dispositive motions were decided, and case was ready for trial).

S.Ct. 1130. Moreover, we note that in 22 actions asserting similar claims against non-profit hospitals, federal district courts have dismissed the state-law claims *without* prejudice after dismissing the federal-law claims. See Appellants' Br. 21–23 (collecting cases); Appellants' Reply Br. 7 n. 5 (additional case).[7]

■ We have considered all of appellees' arguments to the contrary and find them to be without merit. We address further only their contention that our case-law requires us to find that plaintiffs' state-law claims raise "novel or unresolved questions of state law," *Seabrook v. Jacobson,* 153 F.3d 70, 72 (2d Cir.1998), before we may find that the district court abused its discretion in exercising supplemental jurisdiction here. We have repeatedly held that a district court particularly abuses its discretion when it retains jurisdiction over state-law claims raising unsettled questions of law following dismissal of all original-jurisdiction claims. See, e.g., *Valencia,* 316 F.3d at 306 (collecting cases); *Oliveira v. Frito–Lay, Inc.,* 251 F.3d 56, 64 (2d Cir.2001); *Seabrook,* 153 F.3d at 73; *Rounseville v. Zahl,* 13 F.3d 625, 631–32 (2d Cir.1994); *Morse v. Univ. of Vt.,* 973 F.2d 122, 128 (2d Cir.1992). But certainly that is not the only means by which a district court may exceed its discretion. Rather, "[a] district court 'abuses' or 'exceeds' the discretion accorded to it when . . . its decision rests on an error of law (such as application of the wrong legal principle)." *Zervos v. Verizon N.Y., Inc.,* 252 F.3d 163, 169 (2d Cir.2001). The district court here relied solely on a federal interest it failed to adequately identify to justify its exercise of supplemental jurisdiction and otherwise ignored the *Cohill* factors. More is not required to constitute error, and our own application of *Cohill* leads to the conclusion that the district court should have declined jurisdiction over the state-law claims.

Accordingly, we do not reach the merits of plaintiffs' appealed state-law claims, and plaintiffs' further contention that the district court should have granted their request for injunctive relief is moot. Plaintiffs have appealed only three of their state-law claims (breach of contract, breach of duty of good faith and fair dealing, and violation of section 349 of the New York General Business Law). Thus, on remand, the district court should disturb its order only with respect to the three appealed claims.

## III. CONCLUSION

For the foregoing reasons, that portion of the district court's order dismissing with prejudice plaintiffs' state-law claims for breach of contract, breach of duty of good faith and fair dealing, and violation of section 349 of the New York General Business Law is VACATED and the case REMANDED for entry of a revised order dismissing the specified claims without prejudice.

7. In two other cases, both postdating the district court decision here, district courts did exercise supplemental jurisdiction over plaintiffs' state-law claims. One did so without discussion. See *Burton v. William Beaumont Hosp.,* 373 F.Supp.2d 707, 712–13 (E.D.Mich. 2005). The second purported to rely on *Ko-* *lari* but actually described the federal interests at stake in terms of tax policy, not health care policy. See *Bobo v. Christus Health,* 227 F.R.D. 479, 482 (E.D.Tex.2005). Federal tax policy interests were not the interests identified here by the district court.