**William GORDON and Kay Gordon, Plaintiffs,**

**v.**

**Pam LOWELL, individually and in her official capacity as agent and/or employee of the County of Berks, George Kovarie, individually and in his official capacity as Director of Berks County Children and Youth Services,**

Berks County Children and Youth Services, a state agency administered by the county of Berks, and Berks County, a political subdivision of the Commonwealth of Pennsylvania, Defendants.

No. 98–CV–6120.

United States District Court,
E.D. Pennsylvania.

April 18, 2000.

Kathleen D. Dautrich, Reading, PA, for plaintiffs.

Steven D. Costello, Karen E. Minehan, Lancaster, PA, for defendant Lowell.

Michael E. Boland, Mark J. Merolla, Reading, PA, for defendants George Kovarie, Berks County Children and Youth and Berks County.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

Plaintiffs William and Joy Gordon ("Plaintiffs") bring this action against Pam Lowell, in her individual and official capac-

ity; George Kovarie, in his individual and official capacity; Berks County Children and Youth Services; and Berks County ("Defendants"). Plaintiffs allege in the Complaint, pursuant to Sections 1983 and 1985 of the United States Code, violation of the First and Fourteenth Amendments to the United States Constitution, deprivation of Due Process in violation of the Fourteenth Amendment to the United States Constitution, deprivation of counsel in violation of the Sixth Amendment, conspiracy to interfere with civil rights, and violation of civil rights; as well as state law claims including negligence, intentional infliction of emotional distress, failure to train and supervise, negligent injury and negligent failure to train and supervise.

Currently before the court are Defendants' Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and alternative Motion for Summary Judgment, and Plaintiffs' responses thereto.

## I. BACKGROUND

The following facts have been taken from the submissions by the parties. Because this is a consideration on a motion for summary judgment, we view the facts in the light most favorable to Plaintiffs.

Plaintiffs are grandmother and step-grandfather to V.K., a minor child born on May 6, 1986. V.K. was declared dependent pursuant to the Juvenile Act of the Commonwealth of Pennsylvania on or about March 1993, when she was seven years old. Pls' 2/1/2000 Br. at 1–2. The declaration of dependency was precipitated by the March 1993 arrest of V.K.'s mother, who had custody of V.K. at that time. Id.

Once V.K. was declared dependent, and until her adoption, Berks County Children and Youth Services ("BCCYS") had legal custody of and was responsible for her. Under BCCYS's supervision, V.K. lived with Plaintiffs from March until December of 1993. Id.[1] On December 23, 1993, V.K.

---

1. According to Plaintiffs, V.K. also lived with them for roughly six months in 1988, when

was placed in a foster home at Plaintiffs' request. Id. Plaintiffs state that their request stemmed from "emotional and behavioral problems and the lack of guidance, supervision, and support given by any therapist or agency to Grandparents." Id. at p. 2. Thereafter, V.K. lived with foster families, including the family that ultimately adopted her.

Defendant Lowell, a licensed social worker, was V.K.'s treating therapist under the supervision of BCCYS starting in 1994. Id. at p. 3. Ms. Lowell was responsible for directing V.K.'s care and making recommendations to BCCYS based on her treatment of V.K. At some point in 1995 or 1996, therapist Lowell determined that visitations between Plaintiffs and V.K. should be suspended because they were harmful to V.K.'s therapeutic progress. Id. at 3. According to Plaintiffs, this 1995 suspension occurred "after a bitter misunderstanding between BCCYS and Grandparents." Id.

Plaintiffs allege that BCCYS actively discouraged their relationship with V.K.. They claim they were not encouraged to seek custody, and were not participants in the six-month review hearings. Id.

On October 3, 1995, Plaintiffs filed a Petition to Intervene in V.K.'s dependency case, seeking custody of the child.[2] Id. The Petition was filed with the Juvenile Division of the Court of Common Pleas of Berks County. Id. at Ex. B.[3]

In 1996, with the adoption process well under way and a court prepared for a hearing on the termination of parental rights, Plaintiffs requested a neutral therapist to work with them and V.K. The court appointed therapist Lynn Mullis, who evaluated and began working with V.K. and her grandparents on November 4, 1996. Ms. Mullis recommended that the adoption of V.K. by her foster parents proceed. At no time did Plaintiffs attempt to adopt V.K. or block her adoption by the foster family. See Def. Lowell's Ex. C at pp. 51–52, 102–103.

On November 20 1998, Plaintiffs filed a complaint against Defendants, based upon 28 U.S.C.A. §§ 1983 and 1985, and including pendent state claims of claims of negligence and intentional infliction of emotional distress against Defendant Lowell. They seek compensatory and punitive damages.

## II. STANDARD OF REVIEW

We have before us Defendants' motion for summary judgment.[4] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (*"Anderson I"*). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505. All

she was two years old. Pls.' 2/1/2000 Br. at 2. This period was prior to any agency involvement with V.K.'s case. Id.

2. By this time, Plaintiff Kay Gordon was aware that V.K.'s foster parents intended to adopt her. Plaintiffs had no intention of challenging the adoption, as V.K. was doing very well and was happy with the foster family. Def. Lowell's Ex. C at pp. 188–189.

3. Plaintiffs allege that they were granted standing to seek custody; but Defendants cite a November 15, 1995, Order issued by the

Honorable Elizabeth Ehrlich of the Berks County Court of Common Pleas, "for a bonding evaluation with specific reference to increased visitation and contact." Def. Lowell's Br. at p. 3, n. 1.

4. Defendants also moved to dismiss on 12(b)(1) grounds, arguing lack of subject matter jurisdiction. However, Plaintiffs have raised a federal question in the complaint, which is sufficient to withstand a 12(b)(1) motion.

inferences must be drawn and all doubts resolved in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985).

On motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party cannot rest on mere denials or allegations, but must respond with facts of record that contradict the facts identified by the movant. *Id.* at 321 n. 3, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)); *see also First Nat. Bank of Pennsylvania v. Lincoln Nat. Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson I,* 477 U.S. at 249, 106 S.Ct. 2505.

### III. DISCUSSION

In this Section 1983 and Section 1985 action, Plaintiffs have brought claims against Defendants Lowell and Kovarie individually and in their official capacities, and against BCCYS and Berks County. Plaintiffs have alleged that Defendants violated their right to due process in violation of the Fourteenth Amendment. They also allege deprivation of counsel in violation of the Sixth Amendment, and violation of civil rights as protected by the First, Sixth, and Fourteenth Amendments.[5]

### A. 42 U.S.C. § 1983

The court's analysis of the individual liability of each of the Defendants begins with a discussion of constitutional claims under 42 U.S.C. § 1983. Section 1983 reads, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*

Section 1983 does not create substantive rights, but "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder,* 95 F.3d 1199, 1204 (3d Cir.1996). A plaintiff seeking to advance a claim under Section 1983 must establish the deprivation of a right secured by the United States Constitution or federal law, and that the alleged violation was committed by a person acting under color of state law. *Id.; Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

#### 1. Due Process

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Plaintiffs' due process claim must fail, as the facts do not support a claim of a liberty or property interest violation.

 Under the Fourteenth Amendment, an individual cannot be deprived of a property right without due process of law. *Cleveland Board of Education v. Louder-*

---

5. The Complaint also alleges that Defendants violated the First and Fourteenth Amendments by "deliberately and recklessly interfer[ing] with Plaintiffs' family life and family relationship of grandparent-grandchild ..." Compl. at p. 6. However, this bare allegation

and a passing reference in Plaintiffs brief to "first Amendment rights to privacy and to association," are alone insufficient to withstand a motion for summary judgment. *See* discussion at II.

*mill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Property interests are not created by the Constitution, but are defined by existing rules or understandings stemming from state law. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972): *see also Loudermill.*

■ Plaintiffs had no property interest with regard to their grandchild or any issues surrounding her custody and care. To have a property interest in a claimed benefit, a plaintiff must demonstrate more than a unilateral expectation of receiving the benefit; state law must support a legitimate claim of entitlement. *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. 2701; *Midnight Sessions Ltd. v. City of Philadelphia,* 945 F.2d 667, 682 (3d Cir. 1991). Plaintiffs have no such claim of entitlement with regard to any information contained in their granddaughter's files or regarding her adoption, because the applicable state laws do not grant them any such right. *See* 42 Pa.C.S.A. § 6307; 23 Pa.C.S.A. § 2503.

■ Liberty is also guaranteed by the due process clause, and like a property right cannot be deprived without "constitutionally adequate procedures." *Loudermill* at 541, 105 S.Ct. 1487. Parents have a long-recognized fundamental liberty interest in the care, custody and management of their child; this interest is protected by the substantive due process clause. *See Winston v. Children and Youth Services of Delaware,* 948 F.2d 1380, 1391 (3d Cir.1991); *Stanley v. Illinois,* 405 U.S. 645, 650–652, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Santosky v. Kramer,* 455 U.S. 745, 753–54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Hurlman v. Rice,* 927 F.2d 74, 79 (2d Cir.1991). As a general rule, therefore, before parents may be deprived of the care, custody or management of their children without their consent, due process must be accorded to them, ordinarily in the form of a court proceeding resulting in an order permitting removal. *See Stanley,* 405 U.S. at 649, 92 S.Ct. 1208;

*Hurlman,* 927 F.2d at 79 (such due process is "generally in the form of a predeprivation hearing"); *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999).

■ This protection, however, is limited to parents. *See Wallis* 202 F.3d at 1136 (the Fourteenth Amendment "guarantee[s] that *parents and children* will not be separated by the state without due process of law except in an emergency" (emphasis added)). Grandparents have no similar liberty interest under the Fourteenth Amendment, and are therefore accorded no constitutional protection. *See Mullins v. State of Oregon,* 57 F.3d 789, 797 (9th Cir.1995) ("grandparents qua grandparents have no constitutionally protected liberty interest in the adoption of their children's offspring"). Plaintiffs therefore had no liberty interest due Constitutional protection during the relevant time period.

■ The Pennsylvania Grandparents' Visitation Act, 23 Pa.C.S.A. § 5313 confers standing upon a grandparent seeking custody or visitation. Id. However, the act allows a grandparent to petition for partial custody and visitation only when "an unmarried child has resided with his grandparents ... for a period of 12 months or more...." § 5313(a). Standing to bring a petition for physical and legal custody inheres when a grandparent "assumes the responsibility for a child who has been determined to be a dependant child pursuant to 42 Pa.C.S.A. Ch. 63 ...," the applicable language in the instant case. *See* § 5313(b). V.K. was declared dependent in March 1993, and resided with Plaintiffs from that time until December 1993. *See* Compl. at ¶¶ 7, 12. However, Plaintiffs have never filed a petition pursuant to the Grandparents' Visitation Act. Compl. At ¶¶ 17–18. Additionally, as Plaintiffs acknowledge repeatedly, BCCYS had sole custody of V.K., which included the responsibility to "[make] all decisions regarding where this child lived." Pls.' 2/1/2000 Br. at III.A. Therefore, the Pennsylvania statute is inapplicable to Plain-

tiffs, and they did not have the right to seek either visitation or partial custody.

Plaintiffs allege that at the least they were entitled to notice prior to V.K.'s adoption by her foster parents. However, the state statute entitles grandparents to notice of an adoption proceeding only if they are the child's guardians, which Plaintiffs were not. 23 Pa.C.S.A. § 2503 ("[n]otice of the hearing shall be given to the ... guardian of a petitioner who has not reached 18 years of age"). Additionally, we again note that Plaintiffs were aware of V.K.'s pending adoption as early as 1995, and that such awareness attests to some form of notice.

We agree with Plaintiffs that grandparents have assumed an important role in the American family, as is borne out by the statistics and studies cited in Plaintiffs' brief. See id. at III.B.1. However, this does not change grandparents' legal standing in relation to their minor grandchildren. Plaintiffs simply are not possessed of the constitutional rights they assert.

Plaintiffs arguments rely mainly on the protections of the family unit accorded by the United States Constitution and various statutes and cases. See, e.g. Loving v. Virginia; 42 Pa.C.S.A. § 6301 et seq.; 23 Pa.C.S.A. § 6371. However, Plaintiffs reliance is misplaced, as that body of law is specifically limited to the marriage between a man and a woman and to the biological or adopted children of a parent or parents. That Plaintiffs refer to a grandparent-grandchild relationship as familial does not make it so under the law. We are aware of no applicable law granting rights to these Plaintiffs as members of V.K.'s "family."

■ Moreover, whatever the grandparents might have been entitled to up until the point of adoption, Pennsylvania law clearly extinguishes any visitation rights of grandparents once a dependent child is adopted. See Faust v. Messinger, 345 Pa.Super. 155, 497 A.2d 1351 (1985) ("both the right to seek visitation and any visita-

tion rights already established by court order are extinguished upon the adoption of the child").

### B. Conspiracy to Commit Civil Rights Violations

Plaintiffs allege that Defendants engaged in a conspiracy to violate their civil rights, but have shown neither a conspiracy nor a civil rights violation under the applicable federal statute. See 42 U.S.C.A. § 1985. A successful charge requires that Plaintiffs demonstrate first the existence of a conspiracy, and second that the conspiracy caused a deprivation of their constitutional civil rights under § 1985.

■ Proof of conspiracy, or an agreement to commit an unlawful act, is an essential element of claim under this section. Smith v. Butler, 507 F.Supp. 952 (E.D.Pa.1981). An allegation of conspiracy is insufficient to sustain a cause of action under 42 U.S.C.A. S 1985; it is not enough to use the term 'conspiracy' without setting forth supporting facts that tend to show an unlawful agreement. See Drusky v. Judges of Supreme Court, 324 F.Supp. 332, 333 (W.D.Pa.1971); O'Hara v. Mattix, 255 F.Supp. 540, 542 (W.D.Mich.1966). The only evidence Plaintiffs cite for the conspiracy charge is a November 7, 1996 letter from Defendant Lowell to BCCYS, which states, in part, "the decisions about here welfare were reached as TEAM decisions, all of us worked together to ensure [V.K.'s] psychological and emotional welfare." Lowell 11/7/96 letter. However, this one-sided correspondence alone does not sufficiently demonstrate an agreement with the other parties; the decisions that allegedly interfered with Plaintiffs' relationship with V.K. appear from all the other relevant facts to have been made solely by Ms. Lowell.

Moreover, Plaintiffs have again failed to explain what behavior was illegal. They claim that the illegal act was the "deprivation of the Grandparents' civil rights by failure to provide complete information,

and the destruction of their relationship with their granddaughter." Pls.' Br. at III.B.4. As discussed in the preceding section, these charges do not describe an illegal act. In any event, Plaintiffs did receive information from Defendant, and were aware of "what the TEAM was doing" as far as was relevant to the treatment of their granddaughter. Plaintiff Kay Gordon admits that she was entirely aware of the plans for adoption by the foster parents. *See* Defs.' Ex. C. at 55–56, 116.

Also, there is no deprivation of civil rights demonstrated by the facts in this case. The requirements for establishing a cause of action under 42 U.S.C. S 1985(3) are set forth in a line of Supreme Court cases beginning with the decision in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).[6] In *Griffin,* the Supreme Court clarified that the reach of section 1985(3) is limited to private conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." *Id.* at 102, 91 S.Ct. 1790. To state a claim under 42 U.S.C. S 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *United Brotherhood of Carpenters and Joiners of America Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Griffin* at 102–03, 91 S.Ct. 1790. This was reaffirmed in *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993), and has been applied in the Third Circuit. *See, e.g., Lake v. Arnold,* 112 F.3d 682, 685–686 (3d Cir.1997).

In the instant case, the alleged violation of Plaintiffs' rights is not alleged to have been not motivated by racial or otherwise class-based animus. Because the facts do not support claims of conspiracy or of civil rights violations, Plaintiffs § 1985 allegations must fail.

### C. Sixth Amendment Right To Counsel

Plaintiff's claim that they were denied a right to counsel as guaranteed by the Sixth Amendment. Unsurprisingly, Plaintiffs fail to substantiate this claim, as the Sixth Amendment's right to effective assistance of counsel is unambiguously limited to criminal prosecutions. U.S. Const.Am. VI.

### D. Statute of Limitations

In the alternative, Defendants raise a statute of limitations defense, arguing that Plaintiffs' case was not commenced "within two years of the date that they knew or . . . should have known of the alleged injury and that said injury was allegedly caused by Defendant[s]." Def. Lowell's Br. at 21. We find that the facts support Defendants' argument, and that Plaintiffs failed to satisfy the applicable statutes of limitations.

██ Neither § 1983 nor § 1985 contains a specific statute of limitations; instead, courts look to state law for applicable limitations periods. In § 1983 cases, courts apply the statute of limitations applicable to personal injury actions in the state in which they sit. *See Wilson v. Garcia,* 471 U.S. 261, 276–78, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Sameric Corp. of Delaware v. City of Philadelphia,* 142 F.3d 582, 599 (3d Cir.1998). This is true of all § 1983 claims, regardless of the type of violation asserted. *See Wilson,* 471 U.S. at 272, 105 S.Ct. 1938; *287 Corporate Ctr. Assocs. v. Twp. of Bridgewater,* 101 F.3d 320, 323 (3d Cir.1996). For § 1985 actions, courts apply the analogous state statute of limitations. *See Swietlowich v.*

---

**6.** Subsections (1) and (2) of the statute have to do with preventing an officer of the United States from performing duties, and obstruction of justice, respectively. They are obviously inapplicable to this case.

County of Bucks, 610 F.2d 1157, 1162 (3rd Cir.1979); see also Hobson v. Wilson, 737 F.2d 1 (C.A.D.C.1984); Newberger v. U.S. Marshals Service, 751 F.2d 1162 (11th Cir. 1985); Hussey v. Sullivan, 651 F.2d 74 (1st Cir.1981).

The applicable statute of limitations in this case is two years. In Pennsylvania, the statute of limitations for personal injury under 42 U.S.C. § 1983 is two years. See 42 Pa.C.S.A. § 5524(2). Also, the analogous statute of limitations for the § 1985 claim is two years. See id. (statute of limitations includes actions in negligence and personal injury, including intentional and negligent infliction of emotional distress).

■ Plaintiff Kay Gordon testified that in 1995 she was aware of the adoption of V.K. See Def. Lowell's Ex. C at 60. Plaintiffs hired legal counsel on this basis and petitioned to intervene in the dependency action. Additionally, Plaintiffs received a letter from Defendant Lowell in September 1995 clearly explaining that the foster parents, and not the grandparents, were being considered as adoptive resources. See Def. Lowell's Ex. D. Clearly, Plaintiffs had knowledge of the alleged injuries in 1995, and could have filed the present case no later than two years thereafter.

Plaintiffs argue that they "received very little information ... prior to filing their Petition to Intervene in October 1995." III.C. They claim it was after receiving Defendant Lowell's November 1996 letter and the therapy with Ms. Mullis that "certain facts began to emerge." However, they do not state what facts emerged at that time that are at all relevant to their claims, beyond averring that "even at that late date they had only began [sic] to receive sufficient information to enable them to see that their civil rights had been violated." Id. Not all withheld information is relevant to the pursuit of a claim against a party. Ms. Lowell's treatment notes of V.K. and therapeutic decisions about V.K., beyond the information provided to Plaintiffs, was superfluous, and irrelevant to the instant case. Without identifying what information they received at that point that enlightened them to civil rights or any other violations, Plaintiffs fail to demonstrate to this court that the statute of limitations should not begin to run until November 1996 or later.

Also, it is irrelevant that Plaintiffs did not know of BCCYS's claimed role in the alleged conspiracy until November 1996. The limitations period will begin to run even if Plaintiffs do not know all of the facts necessary for their claim. Zeleznik v. United States, 770 F.2d 20, 22–23 (3d Cir.1985), cert. denied, 475 U.S. 1108, 106 S.Ct. 1513, 89 L.Ed.2d 913 (1986); see also de de Botton v. Marple Twp., 689 F.Supp. 477, 480 (E.D.Pa.1988) ("A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based."); Sameric v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir.1998); Lanning v. Southeastern Pennsylvania Transp. Auth., 176 F.R.D. 132, 146 (E.D.Pa.1997). They need only sufficient notice to alert them of the need to begin investigating. Zeleznik at 22–23. Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong. Id.

Plaintiffs' claimed damages stem from the choice to reject them as custodians or adoptive parents for V.K.. Given that they had knowledge of the alleged injury in 1995, their claim fails on statute of limitations grounds. The Plaintiffs received reports from Defendant following court hearings in 1995, they retained counsel in 1995 to represent their interests at dependency and termination hearings, and they knew that V.K.'s foster parents intended to adopt her. See e.g., Defs.' Ex. C. Their actual knowledge of the injury occurred as of 1995. However, Plaintiffs did not file the instant case until November 20, 1998, more than three years after the alleged injury and their knowledge thereof. Under the applicable Pennsylvania statute of limitations, the case is time-barred.

# E. Pendent State Law Claims

Having dismissed Plaintiffs' federal action, we will not consider Plaintiffs' pendent state law claims. 28 U.S.C.A. § 1367 provides that:

(a) ... [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.....

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... (3) the district court has dismissed all claims over which it has original jurisdiction....

28 U.S.C. S 1367(a), (c).

Although we have the discretion to exercise supplemental jurisdiction over the state law claims, we decline to do so based on the consideration set forth in section 1367(c)(3), that we have dismissed all claims over which we had original jurisdiction. *See Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir.1999).

Indeed, the Third Circuit has recognized that, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995) (emphasis added). Plaintiffs point to no fairness consideration in this case hat would lead us to retain jurisdiction over the state law claims. Moreover, because Pennsylvania state courts have not considered a number of issues raised by Plaintiffs state law claims, including those requiring statutory interpretation, it would be imprudent of us to decide those issues in the absence of compelling justification.

Our dismissal of Plaintiffs state law claims will not prejudice them on statute of limitations grounds from bringing such claims in state court. When it codified the law of supplemental jurisdiction, Congress expressly provided:

The period of limitations for any claim asserted under section (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

28 U.S.C. S 1367(d); *see also Hedges v. Musco*, 204 F.3d 109, 122–123 (3d Cir.2000) ("a dismissal under section 1367 tolls the statute of limitations on the dismissed claims for 30 days") (*quoting Beck v. Prupis*, 162 F.3d, 1090 1099–1100 (11th Cir. 1998)); *Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir.1998) ("Section 1367(d) ensures that the plaintiff whose supplemental jurisdiction is dismissed has at least thirty days after dismissal to refile in state court.").

## CONCLUSION

For all of the above reasons, Defendants' Motions for Summary Judgment are GRANTED with respect to all claims and all Defendants. An appropriate order follows.

## ORDER

AND NOW, this 18th day of April 2000, upon consideration of Defendant Lowell's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b), filed December 1, 1999; Defendant Lowell's Motion Summary Judgment filed on December 1, 1999; Defendants George Kovarie, Berks County Children and Youth Services, and Berks County Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b), filed January 20, 2000; Defendants George Kovarie, Berks County Children and Youth Services, and Berks

County Motion for Summary Judgment filed January 20, 2000; Plaintiffs' Response to Defendant Pam Lowell's Motions to Dismiss and for Summary Judgment filed January 26, 2000; Plaintiffs' Response to Defendant Defendants George Kovarie, Berks County Children and Youth Services, and Berks County Motions to Dismiss and for Summary Judgment filed February 1, 2000; it is hereby ORDERED consistent with the foregoing opinion that:

(1) Defendants' Motions for Summary Judgment, listed above, are GRANTED;

(2) Defendants' Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) are DENIED;

(3) Judgment is entered in favor of all Defendants and against the Plaintiffs William and Kay Gordon with respect to all federal claims;

(4) All state law claims are dismissed without prejudice to the right of Plaintiffs to pursue these claims in state court;

(5) This case is closed.