IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Z&R Cab, LLC, Zoro, Inc.,      :
Ronald Blount, and Debra Bell,      :
           Appellants      :
     :
     v.      :     No. 1582 C.D. 2022
     :
Philadelphia Parking Authority      :     Argued: March 4, 2025


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION
BY JUDGE McCULLOUGH                  FILED: April 22, 2025


        Z&R Cab, LLC, Zoro, Inc., Ronald Blount, and Debra Bell (collectively, Licensees) appeal from the October 27, 2022 judgment of the Court of Common Pleas of Philadelphia County (trial court) entered upon the jury verdict in favor of the Philadelphia Parking Authority (Authority) and against Licensees, and from the trial court's July 16, 2020 order granting the Authority's motion for partial summary judgment. After careful review, we affirm.

## I.     Factual and Procedural Background

        Licensees are two Philadelphia taxi companies, a former Philadelphia taxi driver, and the assignee of a Philadelphia taxi dispatch company. Prior to 1990, the Pennsylvania Public Utility Commission (PUC) regulated all taxicabs and limousines in the Commonwealth of Pennsylvania, including those in Philadelphia, subject to the

provisions of the Public Utility Code (Code).[1] In 1990, the General Assembly passed the Medallion Act, which required the PUC to regulate Philadelphia taxicabs pursuant to distinct provisions not applicable to any other public utilities in Pennsylvania. 66 Pa.C.S. § 2414.

In 2004, the General Assembly enacted Act 94,[2] transferring the regulatory responsibility for the Philadelphia taxicab and limousine industries from the PUC to the Authority. Act 94 also created a budget submission process for the Authority to follow and it prescribed a formula that the Authority must use to ascertain assessments imposed on Philadelphia taxi cabs. Pursuant to Section 5707(b) of Act 94, the Authority, through its Taxicab and Limousine Division (TLD), established budget and fee schedules under which it assessed regulatory fees on the various participants in the Philadelphia taxicab and limousine industries. The Authority would submit the budget and fee schedule to the Appropriations Committees of the Pennsylvania Senate and House of Representatives each year. Unless the Appropriations Committees adopted a disapproval resolution by April 15, the Authority's budget and fee schedule would become effective.

Taxicab and limousine industry members were required to pay these fees in order to maintain their certificates of public convenience and/or their ability to operate in the Philadelphia taxicab and/or limousine industries. Failure to pay the fees also could result in the Authority's imposition of fines and penalties on industry members. Certain taxicab operators refused to pay regulatory assessments and fees

---

[1] 66 Pa.C.S. §§ 101-3316.

[2] Act of December 30, 2002, P.L. 2001, No. 230, reenacted and amended by the Act of July 16, 2004, P.L. 758, No. 94, *as amended*, 53 Pa.C.S. §§ 5701-45.

imposed by the Authority and filed a petition in this Court's original jurisdiction, challenging the constitutionality of Section 5707 of Act 94.

In *MCT Transportation Inc. v. Philadelphia Parking Authority*, 60 A.3d 899 (Pa. Cmwlth.), *aff'd*, 81 A.3d 813 and 83 A.3d 85 (Pa. 2013), this Court found in favor of the taxicab operators, concluding that Section 5707 of Act 94 was unconstitutional because it violated the Pennsylvania Constitution by impermissibly delegating legislative power to the Authority by granting the Authority the power to formulate its own budget and fee schedule without restriction or guidance from the General Assembly. We found that the Appropriations Committee's power to disapprove of the Authority's budget did not suffice to pass constitutional muster under the non-delegation doctrine. We also found that Section 5707 of Act 94 deprived the taxicab operators of due process because it did not provide any procedure for challenging the Authority's fee schedule, either before or after its adoption. *Id.* at 916-17. Our decision was later upheld by the Pennsylvania Supreme Court.

In response to *MCT Transportation*, in July 2013, the General Assembly enacted Act 64[3] to amend Act 94 to cure the constitutional shortcomings. Act 64 established a new process for setting the Authority's budget and fee schedule and for calculating the individual taxicab assessment. By enacting Act 64, the General Assembly amended Section 5707 and added Sections 5707.1 and 5710.

Section 5707 of Act 64 now requires legislative approval of the Authority's proposed budgets. Regarding assessments for taxicabs, limousines, and dispatchers, in Section 5707(c)(1)(v), the General Assembly set the taxicab assessment for the fiscal years ending June 30, 2013, and June 30, 2014, to be $1,250.00. 53 Pa.C.S. § 5707(c)(1)(v). Section 5707.1(a) requires the Authority to serve notice of

---

[3] Act of July 9, 2013, P.L. 455, No. 64, *as amended*, 53 Pa.C.S. §§ 5707.1, 5710.

3

assessment to each regulated party. 53 Pa.C.S. § 5707.1(a). Section 5707.1(b) permits regulated parties to file a petition with the Authority that avers that the assessment is excessive or otherwise invalid. 53 Pa.C.S. § 5707.1(b).

On October 22, 2013, Licensees filed a civil rights class action in the United States District Court for the Eastern District of Pennsylvania under 42 U.S.C. § 1983, alleging a federal due process violation and seeking a full refund of the fees they had paid. The District Court dismissed the case on the ground that it lacked subject matter jurisdiction. Licensees appealed the decision to the Third Circuit Court of Appeals. The Circuit Court of Appeals reversed the decision and remanded the case on the ground that the District Court had subject matter jurisdiction because Licensees' claim arose under the United States Constitution and federal law. *Z&R Cab, LLC v. Philadelphia Parking Authority*, 616 F. App'x 527 (3d Cir. 2015). Upon remand, the District Court deferred to a state court.

On June 10, 2014, Licensees filed a complaint in the trial court to pursue remedies under 42 U.S.C. § 1983, claiming that all the putative class members are entitled to a full refund of all fees that they paid from 2004 through 2013 (the period when the now-declared unconstitutional Act 94 was in effect). The Authority filed a motion for summary judgment asking the trial court to rule that the putative class members are not entitled to a class-wide refund.

The trial court granted the motion on the ground that *MCT Transportation* did not hold that the assessments and fees that Licensees paid to the Authority were beyond the Authority's power. The trial court further noted that *MCT Transportation* held that the Authority denied Licensees the procedural due process right to challenge assessments. The trial court ordered the Authority to provide a review procedure regarding assessments and the fees that it charged the taxicab industry from 2004 to

4

2013 under Act 94. The trial court ruled, *inter alia*, that the Authority shall issue notices of assessment to the members of the taxicab industry to whom it charged fees in the years 2004-2013.

Licensees appealed the decision to this Court, which reversed and remanded the case. *Z&R Cab, LLC v. Philadelphia Parking Authority*, 187 A.3d 1025 (Pa. Cmwlth. 2018) (*en banc*). We held that the trial court lacked the authority to impose the procedural remedy it created in its order granting the summary judgment motion and that the order was inappropriate given the existence of genuine issues of fact. *Id.* at 1037. We stated that Licensees' available remedy should be limited in terms of both time and amount. Regarding time, citing *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Department of Business Regulation of Florida*, 496 U.S. 18 (1990), we indicated that states may avail themselves of a variety of procedural protections against any disruptive effects of the Authority's fee schedule's invalidation, such as "enforcing relatively short statutes of limitation applicable to refund actions." *Z&R Cab, LLC*, 187 A.3d at 1037. Regarding the **amount** of the refund, we made clear that basic **principles of causation** must govern any consideration of money damages in the nature of a refund:

> We have substantial doubt regarding Licensees' entitlement to the full refund they demand. In *McKesson* [], the U.S. Supreme Court set forth permissible retroactive remedies for parties burdened by unconstitutional tax statutes. The tax statute at issue in *McKesson* improperly discriminated between different groups of taxpayers in interstate commerce. One available remedy was to refund the difference between the tax paid and the tax that should have been assessed had unconstitutional distinctions not been made. *Id.* Stated differently, one possible remedy was a refund "of the excess taxes paid by petitioner . . . ."
> . . . .

5

> Although we will not decide this issue now, by analogy to *McKesson*, and consistent with [*Z&R Cab, LLC v. Philadelphia Parking Authority*, 616 F. App'x 527 (3d Cir. 2015)], **Licensees could be entitled to recover only the portion, if any, of their fees and assessments that exceeded the amount the Authority would have assessed had it been subject to constitutional standards, guidance, and limits imposed by the General Assembly.**

*Z&R Cab, LLC*, 187 A.3d at 1036-37 (emphasis added).

Following remand, on June 20, 2019, the trial court certified the class composed of all individuals, partnerships, corporations, limited liability companies, or other business entities which paid to the Authority fees assessed under the provisions of 53 Pa.C.S. § 5707(b), from July 16, 2004, until July 9, 2013. The Authority filed a motion for summary judgment, arguing that Licensees' claims for damages for any period prior to October 22, 2011 (two years before the action was filed), were barred by the statute of limitations applicable to claims brought under 42 U.S.C. § 1983. The Authority argued that Licensees should not be permitted to invoke the discovery rule[4] by claiming they were unaware that their injury had been caused by another party's action because Licensees had actual knowledge of the injury and its causal relationship to the Authority on the day each fee and assessment was issued. In support, it presented letters to demonstrate that Licensees knew of the injury and cause. The Authority further argued that by enacting Act 64, the General Assembly cured the constitutional defects found in *MCT Transportation*, and Act 64 was ruled constitutional by the Pennsylvania Supreme Court in *Germantown Cab Co. v. Philadelphia Parking Authority*, 206 A.3d 1030 (Pa. 2019). Therefore, Licensees' claims for refunds during

---

[4] The discovery rule is an exception to the general principle that once a statutory period has expired, a complaining party is barred from bringing a lawsuit. *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011). The discovery rule provides that where a complaining party is reasonably unaware that his or her injury has been caused by another party's conduct, the rule tolls the running of the statute of limitations. *Fine v. Checcio*, 870 A.2d 850, 858-59 (Pa. 2005).

6

the fiscal year ending June 30, 2013, were barred by the adoption of Act 64, which retroactively set the fees for that fiscal year and required a partial refund, without any discretion of the Authority.

By order and opinion dated July 16, 2020, the trial court granted the Authority's motion for partial summary judgment, by narrowing the scope of Licensees' potential claim to an approximately eight-month period from October 22, 2011 (*i.e.*, two years before the class action was filed), to July 1, 2012 (collectively, the damages period). The trial court agreed with the Authority that the discovery rule did not apply because Licensees knew or should have known of both injury and cause as soon as they found increased fees were excessive (injury), and they knew that the fees were proposed and imposed by the Authority (cause). The trial court further agreed with the Authority that Licensees may not claim a refund for the assessments and fees imposed by the Authority for fiscal year 2013 on due process grounds because those fees were set by the General Assembly, and the protections of procedural due process do not extend to legislative action. By Order dated October 19, 2020, the trial court specified the issue which must be addressed at trial:

> The following issue of material fact remains unresolved: whether the amount of damages can be estimated from a comparison between what [Licensees] actually paid [the Authority] under Act 94 and what [Licensees] would have paid [the PUC] had they enjoyed constitutional protections.

(Trial Ct. Op., July 19, 2020, at 2, n.2.) Licensees did not appeal the trial court's decision.

A four-day jury trial commenced on February 14, 2022. Licensees' economic forensics expert, Chad Staller, provided evidence by way of charts and tables of economic loss sustained by Licensees by comparing the general revenue from the Authority to the revenue the PUC would have generated during the damages period.

7

(Reproduced Record (R.R.) at 223a-25a.) The Authority's revenue or "money gained by" the Authority, Staller explained, represented "all the fees that were paid by" or "expended" by Licensees. *Id.* at 225a-26a. With respect to the PUC's revenues, Staller calculated the amount the PUC would have charged based upon the historical revenue that PUC did charge from fiscal year 1997 through 2004-2005. *Id.* at 227a. Staller determined the amount the PUC would have charged in 2005 and thereafter by applying the three-percent growth rate to the averages of the PUC's revenue before 2005. *Id.* at 227a-33a. He assumed, based on the allegation of the complaint, that every cent more the Authority charged than the PUC **was the product of a due process violation**. *Id.* at 257a. That is **because Act 94 had been deemed unconstitutional on grounds of non-delegation and due process.**

On cross-examination, Staller acknowledged that his damage calculation included the administrative surcharge paid with every parking ticket in the City of Philadelphia and amounts that were unrelated to Section 5707 of Act 94, the specific statutory provision *MCT Transportation* declared unconstitutional. *Id.* at 262a-68a. Staller also testified that he did not use the Authority's actual daily receipts to calculate the Authority's revenues for the eight-month damages period. *Id.* at 269a.

To counter Licensees' position that the charges were the product of a constitutional violation, the Authority provided evidence that the Medallion Act (pursuant to which the PUC charged fees and assessments) suffered from the same constitutional infirmities found to exist in Act 94. Christine Kirlin, the Director of TLD, testified that the budgeting and assessment procedures under Act 94 were not different than those used by the PUC under the Medallion Act. *Id.* at 392a-93a. She explained that neither the Medallion Act nor Act 94 set standards or limitations for the

8

regulatory budget. *Id.* Neither required legislative approval before the budget and fee schedule became effective. *Id.* Neither provided a protest procedure for operators. *Id.*

Kirlin also explained that, prior to the adoption of Act 94, the taxicab and limousine industries in Philadelphia were not clean, safe, reliable, or well regulated. *Id.* at 373a. In enacting Act 94, the Legislature explicitly found that the industries would benefit from a well-regulated local focus. *Id.* Complying with that mandate included, among other things, hiring more full-time inspectors, which cost more money. *Id.* at 387a. In addition, the Legislature validated the same level of regulation and assessments that the Authority charged under Act 94 when it passed Act 64 in the aftermath of *MCT Transportation*. *Id.* at 436a. Those assessments and fees under Act 64 were the same, and in many cases higher, than they were under Act 94. *Id.* at 438a.

At the close of evidence, the trial court instructed the jury on the law and sent the jury to deliberate with a Verdict Sheet. Licensees objected to neither. In relevant part, the jury was tasked with answering the following:

> 1. Do you find by a preponderance of the evidence that the [] Authority increased its fees and fines beyond what the [PUC] would have charged during the period of October 22, 2011 through July 1, 2012, as a result of the lack of due process protections in Act 94?

> 2. Do you find that [Licensees] proved by a preponderance of the evidence that they suffered an actual injury during the period of October 22, 2011 through July 1, 2012, as a result of the lack of due process protections in Act 94?

(Jury Verdict Sheet, Licensees' Br., Ex. C.)

The jury unanimously answered "No" to both questions. The jury thus found that Licensees failed to prove that they "suffered an actual injury . . . **as a result of the lack of due process protections in Act 94**." *Id.* The jury also found that the

9

Authority did not increase its fees and fines "beyond what the [PUC] would have charged during the [damages period] **as a result of the lack of due process protections in Act 94**." *Id.* Licensees did not challenge the jury's verdict before the jury was discharged.

Licensees subsequently filed a Motion for Post-Trial Relief seeking a new trial. First, Licensees argued that the jury's verdict was against the weight of the evidence because the only evidence of what the PUC might have charged in 2011 and 2012 was provided by their expert and that evidence showed that the Authority charged more than what the PUC would have charged and those excess amounts **necessarily resulted from a lack of due process protections in Act 94**. Second, Licensees claimed that the trial court's summary judgment rulings impermissibly restricted the jury from considering whether Licensees were entitled to damages before and after the limited damages period. They further claimed that the discovery rule was a question that should have been submitted to the jury.

On September 26, 2022, the trial court denied Licensees' Post-Trial Motion. With respect to Licensees' weight of the evidence argument, the trial court found that the Authority, on cross-examination, had contradicted Staller's opinions, and, therefore, the jury's "No" answer to Question 1 on the Verdict Sheet was not against the weight of the evidence. Concerning Question 2 on the Verdict Sheet, the trial court found that the jury heard ample evidence permitting it to conclude that no portion of the fees and assessments the Authority imposed could be attributed to the due process violations in Act 94. Regarding its summary judgment ruling, the trial court concluded, consistent with its July 16, 2020 order, that the discovery rule did not apply because reasonable minds would not differ in finding that Licensees knew or should have, through the exercise of reasonable diligence, of their alleged injury and

10

its cause.   With respect to the damages period, the trial court concluded that Licensees could not claim a refund for the assessments and fees the Authority imposed in fiscal year 2013 because the protections of procedural due process do not extend to legislative actions.   This appeal followed.

## II.   Issues

On appeal, Licensees raise four issues:

A. Was the jury's verdict against the weight of the evidence where the parties agreed that the Authority increased its fees and fines above what the PUC charged and that the only authority for the increase was an unconstitutional statute (Act 94)?

B. Was the trial court's entry of summary judgment, precluding the jury from considering the discovery rule and restricting the trial's focus to the period 2011 to 2012 an error of law?

C. Did the trial court's entry of summary judgment preclude jury consideration of whether Act 94 accorded a full and adequate retroactive remedy and signal to the jury that the legislature ratified the Authority's past budgets?

D. Did the trial court's entry of summary judgment improperly remove from the jury's consideration whether a full refund would constitute a full and adequate remedy?

(Licensees' Br. at 4-5.)

11

### III. Analysis

### 1.

Licensees argue that the jury's verdict was against the weight of the evidence[5] because Question 1 on the Verdict Sheet could only have been answered "Yes." Licensees argue that there could be only one possible answer to Question 1 because the parties agreed that the Authority charged more than the PUC did under the Medallion Act, and because there was only one statutory basis for the Authority to charge anything at all, and that was Act 94, the statute that the Court declared unconstitutional in *MCT Transportation* for, *inter alia*, violating due process. Thus, according to Licensees, any increased fees and fines charged by the Authority over and above those charged by the PUC (under the Medallion Act) **necessarily** resulted from a lack of due process protections in Act 94. Licensees assert that the jury's refusal to recognize this was against the weight of the evidence.

We address first the Authority's argument that Licensees waived their weight of the evidence claim because they did not move for judgment as a matter of law, never objected to either the jury instructions or the Verdict Sheet, and did not object once the jury returned its verdict.

We do not agree that Licensees waived the weight of the evidence claim. A claim challenging the weight of the evidence is not the type of claim that must be raised before the jury is discharged. Such a claim is not premised upon trial court error or some discrete and correctable event at trial. The challenge does not dispute the power of the jury to render the verdict it rendered, nor does it even allege any facial

---

[5] A trial court's action in granting or refusing such a motion will not be reversed in the absence of a manifest abuse of discretion or a clear error of law. *Premises Commonly Known as Lot No. 26, Section 36, of Official Survey of City of New Castle, Lawrence County v. Redevelopment Authority of City of New Castle*, 432 A.2d 321, 322 (Pa. Cmwlth. 1981).

error in the verdict of the jury. *Criswell v. King*, 834 A.2d 505, 515 (Pa. 2003). Rather, it is a claim which, by definition, ripens only after the verdict, and it is properly preserved so long as it is raised in timely post-verdict motions. *Id.* at 513. The Authority cites *Stapas v. Giant Eagle, Inc.*, 198 A.3d 1033 (Pa. 2018), in support of its waiver argument. *Stapas* is not on point because it did not involve a weight of the evidence claim. Instead, it involved a **problematic verdict**. There, Giant Eagle challenged the jury's ability to award damages for future lost wages. However, it failed to object to the jury's verdict awarding future lost wages before the trial court dismissed the jury. The Supreme Court held that Giant Eagle waived its objection for post-trial relief because a belated objection challenging the jury's ability to render a verdict deprived the trial court of the opportunity to efficiently correct a trial error.

Turning next to the merits, it has been Licensees' position that they were automatically entitled to a full refund of the difference between the charges the PUC would have charged under the Medallion Act and what the Authority charged under Act 94 – **purely based on the fact that Act 94 was found to violate due process protections because it did not provide a means for the taxicab and limousine owners to protest the fees and assessments**. It is their contention that the "only legal basis for the [Authority] to charge fees and fines during the class period was [Section] 5707 [Act 94], and that statute was unconstitutional." (Licensees' Br. at 15.) However, that is not the law.

The United States Supreme Court has explained that damages for a Section 1983 claim should be tailored to the interests protected by the particular right in question. *Carey v. Piphus*, 435 U.S. 247 (1978). Indeed, an injury for a violation of procedural due process rights "cannot be presumed to occur, and . . . plaintiffs at least should be put to their proof on the issue, as plaintiffs are in most tort actions." *Id.* at

13

262. Thus, a Section 1983 plaintiff must establish a causal connection between the constitutional violation and the relief sought.

The Sixth Circuit Court of Appeals' decision in *Halpern 2012, LLC v. City of Center Line, Michigan*, 404 F. Supp. 3d 1109, 1121 (E.D. Mich. 2019), *aff'd*, 806 F. App'x 390 (6th Cir. 2020), is instructive. In *Halpern*, a property owner (Halpern) brought a class action under Section 1983 against the City of Center Line, Michigan (Center Line), challenging the constitutionality of Center Line's ordinance requiring owners who rented their properties to register, comply with habitability standards, and submit to inspections. The trial court granted summary judgment in favor of Halpern, finding that the ordinance violated the Fourth Amendment on its face because it permitted an administrative search without either a warrant or providing the owner with an opportunity to obtain pre-compliance review before a neutral decisionmaker. As explained by the trial court, the fundamental nature of this violation was a deprivation of the opportunity to be heard: "the opportunity for pre-compliance review must be such that a property owner has a chance to challenge a warrantless search before being sanctioned for refusing entry to a city inspector." *Halpern*, 404 F. Supp. 3d at 1121. Although the trial court found the inspection ordinance unconstitutional, it nonetheless rejected Halpern's claim to recover a refund of all fees it paid under the ordinance, including inspection fees.

> To recover damages under § 1983, the plaintiff must bring out facts that establish a causal connection between the constitutional violation and the damages they seek . . . The Court must therefore determine whether the absence of pre-compliance review was both the cause in fact and proximate cause of plaintiff's payment of inspection and registration fees.

14

"Cause in fact is typically assessed using the "but for" test, which requires us to imagine whether the harm would have occurred if the defendant had behaved other than it did[.]" . . . In other words, here, **[the p]laintiff must show that it and the other property owners would not have paid the registration and inspection fees "but for" the absence of pre-compliance review. "[I]f the result would have occurred without the conduct complained of, such conduct cannot be a cause in fact of that particular result."**

But here, the unavailability of a pre-inspection review process or warrant procedure is not the cause in fact of these fees or the "damages" which [the p]laintiff claims to have incurred. To lawfully rent a property within the [c]ity, a property owner must obtain a certificate of compliance and pay registration and inspection fees. Municipalities are entitled to impose inspections and certificates of compliance to ensure the health, safety, and welfare of its citizens . . . . Rental property inspections are therefore clearly mandated by law and it is likewise permissible for [ the d]efendant to charge minimal amounts to offset the costs associated with these inspections . . . . Because registration and inspection fees are lawful requirements and must be paid regardless of the absence of pre-compliance review, its absence cannot be the cause in fact of [the p]laintiff's injuries. And because [the p]laintiff cannot establish that the ordinance's deficiencies were the cause in fact of its injuries, it is unnecessary to determine whether it was the proximate cause of those same injuries.

*Id.* at 1121-22 (emphasis added and citations omitted).

On appeal, the Sixth Circuit affirmed:

Halpern has not shown that Center Line's adoption or implementation of the unconstitutional section of the prior [ordinance] caused it to pay registration or inspection fees. To the contrary, nothing in Halpern's argument or in the record suggests that if Center Line had provided an opportunity for pre-compliance review or required a warrant

15

at the time Halpern's property was registered as a rental and an inspection was scheduled, Halpern would not have paid the required fees.

Of course, causation would be established if the registration and inspection fees were themselves unconstitutional; but they are not. Center Line's rental property registration and inspection requirements are reasonable means of advancing its governmental interests in public safety and welfare, and it may impose reasonable fees to offset the costs of advancing those interests.

*Halpern*, 806 F. Appx. at 395.

The Sixth Circuit specifically rejected the claim that since the fee requirements fell under the same unconstitutional ordinance scheme, they were necessarily invalid and must be refunded under *McKesson*:

> **According to Halpern, *McKesson* and *Carpenter* [*v. Shaw*, 280 U.S. 363 (1930)] establish that Center Line must refund the fees Halpern paid to the city when the unconstitutional section of the [ordinance] was in effect. We disagree**. As the district court in *MS Rentals[, LLC v. City of Detroit*, 362 F. Supp. 3d 404 (E.D. Mich. 2019),] explained in rejecting the same argument, those cases "involved refunding payments where the underlying tax or assessment scheme was deemed unlawful." 362 F. Supp. 3d at 419. **As discussed above, the underlying fees in this case were not unlawful**.
>
> Indeed, *McKesson* highlights the shortcomings of Halpern's claim for damages because, unlike the plaintiff in that case, Halpern cannot demonstrate a difference between what it actually paid the city and what it would have paid had the [ordinance] been constitutional from the start. *See McKesson*, 496 U.S. at 40[].

16

806 F. App'x. at 396 (emphasis added).  Moreover, the *Halpern* Court noted that causation might have been established if the registration fees and inspection fees were themselves unconstitutional, but they were not.  *Id.* at 395.

Here, Licensees' automatic full refund theory is no different from the theory rejected in *Halpern*.  Licensees failed to establish that the lack of due process (lack of means to protest the fees and fines) in Act 94 caused them to pay more fees and fines to the Authority than were paid to the PUC under the Medallion Act.  They failed to **causally** connect the damages they seek to the specific underlying constitutional violation, *i.e.*, the procedural due process violation in Act 94 identified in *MCT Transportation*.  Nothing in Licensees' argument or in the record suggests that the fees and fines **themselves** were unconstitutional (*e.g.*, they were excessive or confiscatory or beyond the Authority's power to impose or that Licensees were absolutely immune from them).  As the Authority's evidence demonstrated, the Medallion Act – the law under which the PUC regulated the Philadelphia taxicab industry from 1991 to 2005 – suffered from the same constitutional infirmities that the *MCT Transportation* Court found to exist in Act 94; namely, it required the PUC to create a budget that included fees and assessments that went into effect without any legislative approval or guiding standard, R.R. at 364a, and without a procedure to challenge the PUC-imposed fees and assessments.  *Id.* at 368a-69a. Christine Kirlin, then-Director of the Authority's TLD, explained:

> Act 94 required us to do the exact same thing that was in the Medallion Act to create a budget with fees and assessments and submit it to the senate and the house committees . . . if they didn't act, it didn't require legislative approval.

*Id.* at 393a.

17

The jury heard unrebutted testimony demonstrating that the Authority would have lawfully imposed the same charges notwithstanding the due process flaws in Act 94. When the Legislature enacted Act 94, it publicly announced that it intended a more robustly regulated taxicab and limousine industry in Philadelphia, which required greater regulatory expenses without any regard to industry members' due process rights. As Kirlin explained, prior to the adoption of Act 94, the taxicab and limousine industries in Philadelphia were not clean, safe, reliable, or well regulated. *Id.* at 376a. In enacting Act 94, the Legislature explicitly found that the industries would benefit from a well-regulated local focus. *Id.* at 375a. Complying with that undisputedly lawful mandate required things, such as hiring more full-time inspectors, which cost more money, and hence higher fees. *Id.* at 387a.

Considering this evidence, we find it was not conscious shocking for the jury to reject Licensees' full refund theory that every dollar the Authority charged in excess of the hypothetical amounts the PUC would have charged under the Medallion Act resulted from the lack of due process protections in Act 94. Accordingly, we find Licensees' weight of the evidence challenge to be without merit.

**2.**

In their second issue, Licensees argue that the trial court erred by granting summary judgment and precluding the jury from considering the discovery rule and restricting the trial's focus to the period 2011 to 2012.[6] They contend that the question of when a person should know he or she has been injured is a fact issue for the jury.

---

[6] The standard of review of the grant of summary judgment is *de novo* and the scope of review is plenary. *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011). Summary judgment is appropriate only if the record clearly demonstrates that there is "no genuine issue of any material fact as to a necessary element of the cause of action." *Id.* (quoting Pa.R.Civ.P. 1035.2(1)). The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Id.*

18

The trial court's entry of summary judgment took this question away from the jury and may have led the jury to believe that passage of the unconstitutional statute must have occurred within two years of filing of the complaint.

Having just concluded that Licensees failed to carry their burden of proof as to causation, we need not decide if the trial court erred in limiting the damages period because that is now irrelevant. Nevertheless, even if we were required to decide the issue, we would hold that the trial court did not err in finding that Licensees' claims for a refund of funds before October 22, 2011, were barred by the two-year statute of limitations. The applicable statute of limitations for Licensees' civil rights action is two years. *Lindquist v. Buckingham Township*, 68 F. App'x. 288, 290 (3d Cir. 2003) ("In Pennsylvania, the statute of limitations for personal injury actions is two years, and thus the statute of limitations for a civil rights cause of action under 42 U.S.C. § 1983 is also two years."). The statute of limitations begins to run on Licensees' claim from the time the cause of action accrues. *S.T. Hudson Engineers, Inc. v. Camden Hotel Development Associates*, 747 A.2d 931, 934 (Pa. Super. 2000). Accrual of a cause of action under Section 1983 occurs "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Graff v. Kohlman*, 28 F. App'x. 151, 153 (3d Cir. 2002) (holding that a property owner's action for excessive property taxes accrued on the date that the property owner received the allegedly inflated property tax assessments, rather than at some later date); *see also Gordon v. Lowell*, 95 F. Supp. 2d 264, 272 (E.D. Pa. 2000) ("[T]he claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong.").

Applying these principles and considering undisputed evidence provided by the Authority, the trial court found that Licensees possessed all relevant facts to file

19

a lawsuit as soon as the Authority levied the assessments and fees at issue. We discern no error.

**3.**

Next, Licensees argue that the trial court erred in ruling that they could not challenge the effect of Act 64[7] and claim a refund for fees and assessments the Authority imposed in fiscal year 2013. In doing so, Licensees claim that whether Act 64 provided a full and complete remedy to the class members was a fact question for the jury to decide. This argument fails for the simple reason that the General Assembly explicitly corrected the constitutional defects in Act 94 as found in *MCT Transportation* as applied to fiscal year 2013 by setting – through duly enacted legislation – the assessment and fee schedule. Thus, those fees were not established by the Authority's unfettered discretion, and Licensees could not possibly claim that they had any basis to protest with the Authority the amounts imposed by the General Assembly.

"[T]he protections of procedural due process do not extend to legislative actions." *Rogin v. Bensalem Township*, 615 F.2d 680, 693 (3d Cir. 1980) (dismissing developer's claim that township violated its procedural due process rights by enacting zoning amendments without affording it a hearing; "to provide every person affected by legislation the various rights encompassed by procedural due process including hearings, opportunity for confrontation and response, clear standards, an impartial arbiter, and possibly judicial review would be inconsistent with the structure of our system of government").

Thus, Licensees had no valid claim for refunds of any amounts assessed and paid for fiscal year 2013 because the General Assembly, not the Authority,

---

[7] To reiterate, Act 64 became effective July 9, 2013 (soon after *MCT Transportation*), and established fees for the fiscal year that ran from July 1, 2012, through June 30, 2013.

20

explicitly adopted those fees and assessments. Any attempt to claim amounts paid in fiscal year 2013 would be an impermissible attempt to raise a due process claim for legislative action.

**4.**

In its last issue, Licensees argue that the trial court's entry of summary judgment improperly denied them the opportunity to seek a full refund of all the fees and fines they had paid under the requirements of Act 94. We discern no such error.

As a matter of law, Licensees were not entitled to a full refund of all the fees and fines they had paid under Act 94. We held in *MCT Transportation* that Act 94 violated procedural due process rights because it did not provide an opportunity for operators to challenge the amount of assessments or fees. We did not hold that taxicab operators were constitutionally immune from the assessments or fees collected under Act 94 or that it was beyond the Authority's power to collect them, which may have entitled Licensees to a full refund. *See*, *e.g.*, *McKesson* (involving unconstitutional discriminatory taxes). Therefore, the trial court did not err by barring Licensees from arguing to the jury that they were entitled to a full refund of all the fees paid under Act 94. *See also* our thorough discussion of this issue in *Z&R Cab, LLC*, 187 A.3d at 1037 ("Licensees could be entitled to recover only the portion, if any, of their fees and assessments that exceeded the amount the Authority would have assessed had it been subject to constitutional standards, guidance, and limits imposed by the General Assembly.").

## IV.  Conclusion

For the foregoing reasons, the trial court's October 27, 2022 judgment and its July 16, 2020 order are affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Z&R Cab, LLC, Zoro, Inc.,              :
Ronald Blount, and Debra Bell,         :
           Appellants              :
                              :
          v.                         :   No. 1582 C.D. 2022
                              :
Philadelphia Parking Authority         :

## ***ORDER***

       AND NOW, this 22nd day of April, 2025, the October 27, 2022 judgment of the Court of Common Pleas of Philadelphia County and its July 16, 2020 order are hereby affirmed.

_____
                PATRICIA A. McCULLOUGH, Judge